

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–13–1107

| | |
|---|---|
| ASHLEY GWINUP | Opinion Delivered May 28, 2014 |
| APPELLANT | |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. J-2012-377-C/N] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and L.R., MINOR CHILD | HONORABLE THOMAS E. SMITH, JUDGE |
| APPELLEES | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Ashley Gwinup appeals from a Benton County Circuit Court order terminating her parental rights to her daughter, L.R. Gwinup challenges the trial court's finding that it was in the child's best interest to terminate her parental rights. We find no error and affirm.

We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Grounds for termination of parental rights must be proved by clear and convincing evidence. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839

S.W.2d 196 (1992). When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). We give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

In order to terminate parental rights, it must be proved that termination is in the children's best interest. *Smith v. Ark. Dep't of Health & Human Servs.*, 100 Ark. App. 74, 264 S.W.3d 559 (2007). This includes consideration of the likelihood that the child will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2013). In considering the potential harm caused by returning the child to the parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. Additionally, the risk for potential harm is but a factor for the court to consider in its analysis. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004).

Gwinup concedes that the Arkansas Department of Human Services (DHS) sufficiently established a statutory ground for termination—the prior involuntary termination of her parental rights to another child. Her only challenge to the termination is the court's

determination that potential harm would befall the child if custody were returned to her. Thus, the only issue on appeal is whether the trial court's best-interest finding was supported by clear and convincing evidence.

In October 2011, DHS opened a protective-services case without court involvement based on Gwinup's history with DHS[1] and concerns that Gwinup was unable to properly care for or protect the child. Approximately six months later, DHS removed L.R. from Gwinup's custody after L.R. was discovered living in unsanitary conditions and amid reports that Gwinup was not adequately supervising the child despite being provided resources by DHS.

In August 2012, the court adjudicated L.R. dependent-neglected. The court specifically found that Gwinup was "incapable of providing a clean, sanitary, and stable living arrangement that protects the child's health and safety" and that she was "incapable of adequately supervising the juvenile." Gwinup stipulated to the dependency-neglect finding due to her inability to provide the child with stability.

In June 2013, DHS filed a petition for the termination of Gwinup's parental rights. The petition alleged the following statutory grounds for termination: (1) that her parental rights had previously been involuntarily terminated to another child, and (2) that the child had been out of Gwinup's custody for twelve months and Gwinup had failed to correct the conditions causing removal.

---

[1]In November 2007, the Washington County Circuit Court entered an order terminating Gwinup's parental rights to another child, M.B., after M.B's sibling died in a suspicious house fire.

In October 2013, the trial court entered an amended order terminating Gwinup's parental rights, finding that DHS had proved statutory grounds for termination and that termination was in the best interest of the child. Gwinup appeals the order of termination, arguing that there was no evidence presented of (1) a current lack of parental capacity to provide for L.R., (2) an indifference to remedy the cause for removal, or (3) any harm to L.R. if contact with Gwinup was continued. In essence, Gwinup maintains that she had taken great strides to make positive and long-lasting changes in her life after L.R. had been removed from her home and while she was incarcerated. She further contends that she had taken significant action toward rectifying the issues that would keep her from regaining custody of her daughter and that she should not be disparaged for her past deficiencies.

Evidence that a parent begins to make improvement as termination becomes imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place. *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). It is true that Gwinup began to make strides with the case plan toward the very end. However, she failed to comply early on and failed to prove that she could provide the child with a safe and stable home environment. Terminating parental rights based solely on past behavior may not be appropriate, but that behavior cannot be ignored when determining whether return of the child to the parent is in the child's best interest. Here, Gwinup had already had her parental rights to one child involuntarily terminated due to the death of another child—a death that was found to be caused by Gwinup. There was also a true finding of abuse and neglect regarding the battery

4

of a separate child with a closed fist. Despite the recent progress, she has a lengthy history of drug use, unstable housing and employment, and criminal activity, including incarceration at the time of the termination hearing. Due to her incarceration, her chance to continue to show progress in these areas has been interrupted. Upon her release, there would still need to be substantial time to show that she can continue with that progress and that the child would not be placed in any danger. This child is young and adoptable. Based on these facts, the trial court's finding that it was in the best interest of the child to terminate parental rights was not clearly erroneous.

Affirmed.

GRUBER and GLOVER, JJ., agree.

*Dusti Standridge*, for appellant.

*Tabitha Baertels McNulty*, DHS Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.