Cite as 2014 Ark. App. 465

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-834

| | |
|---|---|
| SAMANTHA VILLASALDO <br><br> APPELLANT <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES <br><br> APPELLEE | **Opinion Delivered** SEPTEMBER 17, 2014 <br><br> APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. JV-2011-261(III)] <br><br> HONORABLE ANNIE HENDRICKS, JUDGE <br><br><br> AFFIRMED |

## BILL H. WALMSLEY, Judge

Appellant Samantha Villasaldo appeals from the Sebastian County Circuit Court's termination of her parental rights to her son J.G. (DOB: 4-9-2010).[1] Villasaldo argues that there was insufficient evidence to support termination. We affirm.

On April 4, 2011, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect based on allegations that J.G. had sustained a skull fracture and several broken ribs. J.G. was adjudicated dependent-neglected on September 15, 2011, due to physical abuse by an unknown offender and for both parents' failure to protect their son.[2] DHS was ordered to provide services to Villasaldo, including

---

[1]In *Villasaldo v. Arkansas Department of Human Services*, 2014 Ark. App. 258, this court ordered rebriefing due to deficiencies in Villasaldo's abstract and addendum.

[2]The father, Jaime Guzman, consented to termination of his parental rights and is not a party to this appeal.

SLIP OPINION

active–parenting classes, parenting–without–violence classes, psychological evaluations, and counseling.

On December 11, 2012, DHS filed a petition for termination of Villasaldo's parental rights on grounds that J.G. had been adjudicated dependent–neglected, remained outside his mother's custody in excess of one year, and, despite a meaningful effort by DHS to rehabilitate her, Villasaldo had not remedied the conditions that caused the child's removal;[3] that other factors or issues arose subsequent to the filing of the original petition that demonstrated that returning the child to Villasaldo's custody was contrary to the health, safety, or welfare of J.G.;[4] and that J.G. was subjected to aggravated circumstances based on the severity of his injuries and because it was unlikely that additional services would result in successful reunification with Villasaldo.[5]

A termination hearing was held on February 13, 2013. Dr. Karen Farst, who examined J.G. at Arkansas Children's Hospital on April 1, 2011, testified that he suffered a complex skull fracture and five broken ribs. She testified that such injuries were not typically caused by routine household accidents, and she opined that the injuries resulted from one or two incidents of child abuse. Dr. Farst testified that the parents gave no history that could account for J.G.'s injuries. According to Dr. Farst, there was virtually no change in Villasaldo's demeanor when she was informed that her baby had been physically abused.

---

[3]Ark. Code Ann. § 9–27–341(b)(3)(B)(i) (Supp. 2013).

[4]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii).

[5]Ark. Code Ann. § 9–27–341(b)(3)(B)(ix).

2

Villasaldo testified that she had fully complied with the case plan implemented by DHS. She confirmed that, around the time J.G. was injured, she was living with her parents and minor brother and that at times Guzman lived with them. Villasaldo testified that her family told her that they had no knowledge of the abuse and that Guzman did not provide a credible explanation for J.G.'s injuries. Villasaldo testified that she was not certain that Guzman had physically abused J.G. because she did not see what happened.

Dr. Nancy Powell, a clinical psychologist, evaluated Villasaldo in January and August 2012. Dr. Powell testified that the results of the first evaluation were invalidated because Villasaldo had "gone way over the line with attempting to look good on her test." Dr. Powell noted, however, that a different section of the test revealed that Villasaldo had a serious deficit with respect to her ability to feel empathy for her child. A second evaluation showed that Villasaldo was still in a significantly high-risk category for her lack of empathy. According to Dr. Powell, while the test results indicated that Villasaldo did not appear to be a potential child abuser, it was possible that Villasaldo had simply learned how to better answer the questions to stay within acceptable limits on the test. Dr. Powell further stated that Villasaldo's lack of empathy was consistent with a parent who fails to protect her child, and she opined that J.G. would be at risk if returned to Villasaldo's custody.

Melissa Dancer, a family-service worker with DHS, testified that Villasaldo did not express outrage that someone had abused J.G. and she did not request that DHS find the perpetrator of the abuse. Also, Dancer noted that Villasaldo did not distance herself from those who had access to, and may have abused, J.G. Dancer said that, as of the date of the hearing,

SLIP OPINION

DHS was still unaware who caused J.G.'s injuries, which made it difficult to address the problem that caused the child to be removed from Villasaldo's custody. Dancer further testified that, at minimum, Villasaldo failed to protect J.G. and that returning him to her custody would put the child in danger.

The trial court found that J.G. had been out of Villasaldo's custody for twenty-two months; that Dr. Farst's testimony that J.G.'s injuries were the result of child abuse was credible; that Villasaldo was J.G.'s primary caregiver; and that Villasaldo did not appeal the court's prior finding that she had failed to protect her son. The trial court added that

> [t]he court's finding that the juvenile was dependent/neglected as a result of abuse and neglect, and that the neglect, in and of itself, with a parent identified as the offender, could have endangered the life of the juvenile is actually a separate ground for termination of parental rights as set forth [in] A.C.A. 9–27–341(b)(3)(B)(vi)(*a*). There would have been no requirement for twelve (12) months of services to attempt to rehabilitate these parents. They have been provided with considerably more than was required by law to give them an opportunity to have the child returned to them.[6]

The trial court further found that, while Villasaldo had technically complied with the case plan, the condition that caused J.G.'s removal from her home was not resolved given that the identity of the person who caused J.G.'s injuries was still unknown. The trial court found that Villasaldo's lack of empathy posed a significant risk to J.G. such that he could not be safely returned to her custody. The trial court concluded that termination of Villasaldo's parental

---

[6]Section 9–27–341(b)(3)(B)(vi)(*a*) sets forth the following ground for termination: "The court has found the juvenile . . . dependent-neglected as a result of neglect or abuse that could endanger the life of the child . . . which was perpetrated by the juvenile's parent or parents . . . ." Such findings by the juvenile division of circuit court shall constitute grounds for immediate termination of parental rights of one or both of the parents. Ark. Code Ann. § 9–27–341(b)(3)(B)(vi)(*b*).

SLIP OPINION

rights was in J.G.'s best interest.

Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Gwinup v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 337. Termination of a parent's rights must be based on clear and convincing evidence that it is in the best interest of the child, considering the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2013). The court must also find one of the grounds outlined in Arkansas Code Annotated section 9-27-341(b)(3)(B). Grounds for termination of parental rights must be proved by clear and convincing evidence. *Gwinup*, *supra*. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.*

We review termination-of-parental-rights cases de novo. *Gwinup*, *supra*. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the trial court clearly erred in finding that the relevant facts were established by clear and convincing evidence. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark. App. 1, 115 S.W.3d 332 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). We give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*

Villasaldo does not challenge the trial court's finding that termination of her parental

SLIP OPINION

rights was in J.G.'s best interest, so this court's review is limited to determining whether the trial court clearly erred in finding that a ground for termination was proved by clear and convincing evidence. *Fredrick v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, 377 S.W.3d 306. Villasaldo argues that Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(*a*) did not apply to her because there was no evidence as to the identity of the individual who abused J.G. Villasaldo contends that, in determining whether she failed to protect her son, the trial court must have speculated that she knew or should have known who abused J.G. Further, Villasaldo maintains that she cooperated with the court's orders, benefited from the services provided by DHS, and showed objective improvement.

The particular ground for termination in section 9-27-341(b)(3)(B)(vi)(*a*) was not alleged by DHS in its petition. Although the statute was cited in the trial court's order, it is not clear to what extent the trial court relied on it. In any event, it would be inappropriate for this court to rely on a ground not alleged in DHS's petition to support termination. *Draper v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58.

Villasaldo's argument on appeal pertains to only the one ground discussed above. When an appellant fails to attack the trial court's independent, alternative basis for its ruling, this court will not reverse. *Thomsen v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 687, 370 S.W.3d 842. Other grounds for termination were properly alleged by DHS in its petition and have gone unchallenged by Villasaldo.

We note that Villasaldo did not appeal from the adjudication order in which the trial court found that she failed to protect J.G. from abuse. A parent's failure to appeal the rulings

made in an adjudication order precludes appellate review of those rulings in an appeal from a subsequent order. *Ashcroft v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 244, 374 S.W.3d 743. Thus, this court does not question whether Villasaldo indeed failed to protect her son from abuse because that fact has been established.

Progress toward or even completion of the case plan is not a bar to termination of parental rights. *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, 426 S.W.3d 520. What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for her child; mere compliance with the directives of the court and DHS is not sufficient if the root cause of the problem was not adequately addressed. *See Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

There was evidence that Villasaldo displayed a lack of empathy for her child, which Dr. Powell testified put J.G. at risk of not being protected by Villasaldo. Despite receiving nearly two years of rehabilitative services, Villasaldo was in no better position to protect J.G. at the time of the termination hearing than she was when J.G. was adjudicated dependent–neglected. Villasaldo's completion of the case plan did not achieve the intended result of making her capable of protecting J.G.

We agree with the trial court's observation that J.G. is in need of permanency. The intent of our termination statute is to provide permanency in a juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. *Fredrick*,

*supra*. Based on our review of the entire record, we hold that the trial court did not clearly err in determining that there was sufficient evidence to prove at least one ground to support the termination of Villasaldo's parental rights.

Affirmed.

GLOVER and VAUGHT, JJ., agree.

*H. Keith Morrison*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor child.