SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–237

| | |
|---|---|
| SHANITRA GULLEY <br><br> APPELLANT <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN <br><br> APPELLEES | Opinion Delivered AUGUST 31, 2016 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION [NO. 60JV-2014-1011] <br><br> HONORABLE WILEY A. BRANTON, JR., JUDGE <br><br> AFFIRMED |

## DAVID M. GLOVER, Judge

The Pulaski County Circuit Court terminated Shanitra Gulley's parental rights to her three children, Z.G. (born 8/3/2009), K.G. (born 3/17/2011), and J.P. (born 1/5/2006). Gulley appeals the termination, arguing that the circuit court erred in finding the Department of Human Services (DHS) proved the grounds alleged in the termination petition by clear and convincing evidence and the termination was in the best interest of the children. We affirm the trial court's decision.

DHS filed a petition for ex parte emergency custody on July 21, 2014. In an affidavit attached to the petition, DHS family-service worker Shanesha Arbor stated that on July 14, a protective-services case had been opened on Gulley based on medical neglect of J.P., who has sickle-cell anemia, due to missed medical appointments; that Gulley had left J.P. alone at Arkansas Children's Hospital (Children's) on July 13 and had gone to UAMS's emergency

room, where she was ultimately hospitalized due to her own sickle-cell issues; that Gulley left no contact information with J.P. at Children's; and that J.P. was admitted to Children's due to her medical issues. Gulley had restricted her mother, who was J.P.'s only support, from coming to Children's or calling to check on J.P. because she was angry with her mother. Medical records gathered by Arbor indicated J.P. had not been seen for regular medical appointments at Children's since November 2013, and J.P.'s prescription, which was to be refilled monthly, had not been filled since January 2014.

DHS reached Gulley at UAMS via telephone. Gulley did not know when she would be released from the hospital, and when asked who could be available for J.P., Gulley was adamant her mother was not allowed to go to the hospital or be informed about J.P.'s health. When asked who was taking care of her other children, Gulley stated she had a babysitter. The following day, Arbor performed a safety check on Gulley's other children and found them at home alone. Arbor called the Little Rock Police Department; an officer found little food in the refrigerator and a pallet on the floor for the children. While the police were walking through the house, two people arrived to check on the children and told the officer that "Sweet Pea" was supposed to be watching the children but had a doctor's appointment; they did not know how long the children had been by themselves. Gulley claimed she did not know the children had been left alone; she also did not know Sweet Pea's real name, although he had been staying at her house.

The ex parte order for DHS emergency custody was granted on July 21, 2014. A probable-cause order was filed on August 28, 2014, finding it was contrary to the welfare of

the children to be returned home and continuing custody of the children with DHS. The children were adjudicated dependent-neglected in an order filed October 8, 2014; Gulley stipulated to this finding. The trial court specifically found the two younger children were left alone with no supervision and also with Sweet Pea, an inappropriate caregiver, and Gulley had subjected J.P. to medical neglect by not following medical instructions and drug therapy for J.P.'s sickle-cell anemia.

In a permanency-planning order entered on January 21, 2015, the trial court continued custody of the children with DHS, with the goal of the case remaining as reunification. The trial court noted Gulley had four positive drug screens, had missed four visitations, and it remained to be seen how much progress was being made. A second permanency-planning order was entered on May 21, 2015; custody was again continued with DHS, with the goal of the case remaining reunification. In this order, the trial court expressed its concern about Gulley's questioning of the DHS caseworker as to why she was "in her business" when asked about various male guests in her home during drop-in visits. The trial court advised Gulley both it and DHS were going to be "in her business" to determine if her home was appropriate for the children, and Gulley's attitude that she could do whatever she wanted when the children were not in her home was not the best approach to regaining custody. The trial court found Gulley had made an effort to comply with court orders but stated it remained to be seen whether she had made material progress toward the goal of reunification. The trial court ordered Gulley to attend J.P.'s medical appointments with her mother (all three children

had been placed with their maternal grandmother by this time) to learn how to provide for J.P.'s needs.

A third permanency-planning order was filed on August 27, 2015; the trial court continued custody of the children with DHS and changed the goal of the case to termination of parental rights. The trial court was particularly concerned with the fact Gulley's house was the target of a drive-by shooting by someone who mistakenly believed that a man who formerly lived there was still there; while the trial court stated it would normally consider Gulley as a victim, the history of the case persuaded it that Gulley's lifestyle invited such incidents, which presented serious safety concerns. The trial court also referenced Gulley's psychological evaluation, which found Gulley had a clear personality disorder, strong antisocial traits, and an "inadequate personality," as well as poor insight; these issues raised serious concerns about returning the children to her care given the fact she lacked the capacity to understand how ineffective she was at managing herself and her children. The evaluation further found Gulley was a "highly inadequate" and unstable individual with erratic behavior issues who did not have stable housing, who had poor relationships with males and with her mother, and who had a chronic problem with marijuana as well. The trial court expressed concern that Gulley continued her habit of surrounding herself with "inadequate" individuals by allowing several people to move into her house rent free because she sympathized with their bad circumstances. The trial court found Gulley had not made material progress toward

reunification, and that Gulley was still living the "chaotic" lifestyle she had been living since the case had begun.

DHS filed a petition to terminate Gulley's parental rights on October 6, 2015, alleging five grounds for termination—Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015) (the court has adjudicated the juvenile dependent-neglected and the juvenile has continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal those conditions have not been remedied by the parent); Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)* (other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that the return of the juvenile to the home is contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate services, the parent had manifested the incapacity or indifference to rehabilitate the circumstances preventing the return of the juvenile to the home); Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)* (the parent has subjected the juveniles to aggravated circumstances); Arkansas Code Annotated section 9-27-341(b)(3)(B)(iv) (the parent has abandoned the juveniles); and Arkansas Code Annotated section 9-27-341(b)(3)(B)(ii)*(a)* (the juveniles have lived outside the parent's home for twelve months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juveniles). The trial court entered an order on December 10, 2015, terminating Gulley's parental rights on the bases the children had been out of Gulley's home for twelve months, and the conditions that necessitated removal had not

been remedied; subsequent factors arose after the original petition for dependency-neglect, and Gulley had failed to rehabilitate the circumstances preventing return of the children; and Gulley had subjected the children to aggravated circumstances.[1]  Specifically, the trial court found Gulley was not credible; her life continued to be chaotic, with unstable housing and a history of moving from one man to another; she was currently pregnant but not in a relationship with that baby's father; she had demonstrated difficulty managing her own medical care and was unable to be a responsible, insightful manager of J.P.'s medical needs; she had made no progress in bettering her situation, as she would have to quit her job shortly at Pizza Hut due to the birth of the child she was currently carrying or due to her own poorly managed sickle-cell anemia; and it was unlikely services would result in a successful reunification within a reasonable period of time, as the children had been in foster care for over a year, and Gulley had not shown any measurable progress in demonstrating a capability to parent her children.

We review termination-of-parental-rights cases de novo. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. An order terminating parental rights must be based on clear and convincing evidence. *Camarillo-Cox v. Arkansas Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).  Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *Spangler*, *supra*. When

---

[1]The trial court also terminated the parental rights of all putative fathers; none of the putative fathers is a party to this appeal.

the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson*, *supra*. However, we do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

In order to terminate parental rights, the trial court must determine by clear and convincing evidence that such termination is in the child's best interests, including consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)  One of the statutory grounds for termination found in Arkansas Code Annotated section 9-27-341(b)(3)(B) must also be proven by clear and convincing evidence.

Gulley contends DHS failed to prove by clear and convincing evidence any of the three grounds cited by the trial court to terminate her parental rights. We disagree. The "twelve months" ground requires the children be adjudicated dependent-neglected, be out of the parent's custody for twelve months, and that the parent failed to remedy the conditions that caused the children's removal.  Gulley does not dispute her children had been adjudicated dependent-neglected or that they had been out of her custody for twelve months; however, she contends the trial court erred in finding she had failed to remedy the conditions that had

caused the children's removal. She argues she was in compliance with the trial court's orders because she had attended parenting classes and counseling, had begun attending J.P.'s medical appointments, had a job, had participated in family counseling with her mother, and had moved to new housing. Gulley contends she completed everything requested of her by the trial court, therefore remedying the causes of her children's removal.

Under our de novo review, we cannot say the trial court clearly erred in finding Gulley failed to remedy the conditions that had caused her children's removal. The trial court was clearly concerned Gulley had not made enough progress to successfully parent her children. Progress toward, or even completion of, the case plan is not a bar to termination of parental rights. *Villasaldo v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 465, 441 S.W.3d 62. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for her children. *Schaible v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 541, 444 S.W.3d 366. Here, while Gulley had begun participating in J.P.'s medical visits, there was no indication she would be able to manage J.P.'s sickle-cell anemia on her own—her failure to seek proper medical treatment for J.P. was the reason J.P. had been hospitalized at the beginning of this case, and Gulley had not shown she had a grasp of what was required to keep J.P. safe and to keep her sickle-cell anemia in check. Furthermore, the trial court found Gulley was not credible, continued to lead a "chaotic" lifestyle, and expressed concern Gulley would soon have to quit her job due to her pregnancy. When the interests of minor children are involved, the trial court is in a superior position and

has the best opportunity to observe the parties, and these observations carry a great weight. *Trout v. Arkansas Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004). The trial court's decision to terminate Gulley's parental rights on this ground was not clearly erroneous; because only one ground is necessary to sustain termination, we need not discuss the other two grounds for termination.

Gulley also contends it was not in her children's best interest for her parental rights to be terminated. She does not dispute the children were adoptable, but contends the trial court erred in finding the children faced a substantial risk of harm if returned to her. We disagree. In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Collins v. Arkansas Dep't of Human Servs.*, 2013 Ark. App. 90.

Here, the potential harm is comprised of the same facts that support the termination of Gulley's parental rights on the "twelve months" ground—her "chaotic" lifestyle, her poor decision-making, and her inability to properly manage J.P.'s sickle-cell anemia. A parent's past behavior is often a good indicator of future behavior. *Hernandez v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 250, ___ S.W.3d ___. The trial court did not find Gulley credible, and

it saw continued patterns of bad decisions and a failure to properly manage J.P.'s serious medical condition. We cannot say that this finding was clearly erroneous.

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Tina Bowers Lee*, Ark. Pub. Defender Comm'n, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.