BRANDON J. HARRISON, Judge
Kyle McKinney appeals the termination of his parental rights to his three children. He generally challenges the circuit court's best-interest finding and asserts that the Arkansas Department of Human Services (DHS) did not prove a lack of compliance with the case plan. We affirm.
On 17 June 2016, DHS exercised a 72-hour hold on three-month-old A.M. after a medical examination at Arkansas Children's Hospital revealed bone fractures, head trauma, brain damage, and a subdural hematoma. See Mercado v. Ark. Dep't of Human Servs. , 2017 Ark. App. 232, 519 S.W.3d 715. A.M. is the daughter of Francesca Mercado, who was McKinney's girlfriend at the time.[1] McKinney and Mercado also lived together. As part of DHS's investigation, it learned that McKinney's three children, seven-year-old J.M., four-year-old K.M.1, and three-year-old K.M.2, either visited or resided in his and Mercado's home.[2] Due to the physical abuse by an unknown offender and the magnitude of A.M.'s injuries, DHS placed a 72-hour hold on K.M.1 and K.M.2. J.M. was returned to her mother's custody, and DHS requested that McKinney have no contact with her.
*103 On 20 June 2016, DHS petitioned for and was granted an order of emergency custody and order of protection for J.M., K.M.1, and K.M.2. In August 2016, the circuit court found probable cause to continue DHS's custody of K.M.1 and K.M.2 and to continue the order of protection for J.M. In September 2016, the court adjudicated the children dependent-neglected. The court noted that Mercado and McKinney had married[3] and found that the "juveniles are at substantial risk of serious harm as a result of physical abuse of the juveniles' step-sibling, [A.M.], by Kyle McKinney." McKinney was ordered to obtain and maintain stable and appropriate housing, income, and transportation; complete parenting-without-violence classes; submit to a psychological evaluation and comply with the recommendations; submit to random drug-and-alcohol screens; and if a positive test occurs, undergo a drug-and-alcohol assessment.
In November 2016, DHS petitioned to terminate McKinney's parental rights pursuant to Ark. Code Ann. § 9-27-341(c)(2), which provides that a court may terminate the rights of one parent and not the other parent if the court finds that it is in the best interest of the child. See Ark. Code Ann. § 9-27-341(c)(2)(B) (Supp. 2017). As grounds, DHS alleged that a sibling of the children had been adjudicated dependent-neglected as a result of neglect or abuse that could endanger the lives of the children, subsequent factors, and aggravated circumstances. See Ark. Code Ann. § 9-27-341(b)(3)(B)(vi), (vii), and (ix).
In December 2016, the circuit court entered a review and custody order. That order placed K.M.1 and K.M.2 in the custody of their mother, Katessa Mayner, and ordered McKinney to pay child support. The order also continued custody of J.M. with her mother, Taryn Price, and ordered McKinney to pay child support.
The court conducted a lengthy termination hearing over several days in April and May 2017 and also received posttrial briefs in lieu of closing arguments from the children's ad litem, DHS, and McKinney. The majority of the testimony presented at the termination hearing focused on the nature and extent of A.M.'s injuries and who was responsible for those injuries. In a letter opinion dated 12 June 2017, the circuit court specifically found both McKinney and Mercado not credible. Turning to the day of A.M.'s injuries, the court found that when A.M. was first presented to the emergency room,
no one had any plausible explanation as to what might have caused the injuries. The story was that one of the other children had fallen on the baby or that a thrown toy had struck her. These theories were discounted by Dr. Farst and by common sense. The opinion of Dr. Farst was that if the baby was fine at breakfast and at noon the injury had to have occurred when the child was in the care of McKinney that afternoon.
On June 17, DHS placed a hold and obtained an ex parte order of custody on two of his children and an order of protection for the one of which he did not have custody. At this time the staff at ACH told McKinney that he could not stay there, as he was not related to [A.M.]. To solve that problem he married Francesca [Mercado] on June 27, eleven days after [A.M.] was admitted. He is then the stepfather. It is the opinion of this court, based on the psychological diagnosis, that this was in order for *104 him to stay close to
Francesca, not lose control of the situation and anything she might tell the medical staff or authorities.
....
Sometime after the probable cause hearing Francesca has an "epiphany" as described in Ms. Imbeau's brief. She recalled falling with the child in the bathtub the night before her symptoms appeared. Her excuses for not reporting this earlier, like when the initial history was being taken at Children's, just don't hold water. It is the finding of this court that this statement is a pure fabrication on the part of Francesca and a result of the manipulation of Kyle.
After noting further changes in the stories of both McKinney and Mercado at the adjudication hearing and the termination hearing, the court concluded that "nothing these two people say can be believed." The court found that DHS had proved by clear and convincing evidence every ground alleged in the termination petition, that "Kyle's behavior in maintaining a relationship with Francesca after she had told him that she caused the injuries to [A.M.] shows a total disregard for the danger she may be to his children," and that "[t]his man has no regard for the safety and well being of his children." The court also noted that it determined at the adjudication hearing that McKinney had abused A.M., and the adjudication order was not appealed, so that fact was now settled. The court also again made a specific finding that McKinney was the person who had abused A.M.
The court entered an order terminating McKinney's parental rights on 12 July 2017. The order fully incorporated the findings of fact and credibility determinations in the court's letter opinion. The order also found that it made no legal difference whether the children were adoptable because they would remain in the care of their mothers. As to potential harm, the court found:
[T]he above facts supporting grounds for termination of parental rights demonstrate that the juveniles would be at great risk of harm if returned to Kyle McKinney. [A.M.] sustained extensive, life-threatening injuries from which she will never fully recover in the home of Kyle McKinney and Francesca Mercado when the herein juveniles were present. Such circumstances establish that the herein juveniles would be at risk of harm in this home and absolutely nothing has meaningfully changed to alleviate this risk. The potential for harm is abundant and the Court cannot wait for actual harm to befall these children before taking the steps necessary to protect them.
McKinney has appealed from this order.
A circuit court's order that terminates parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) ; Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. Dinkins, supra. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. Id.
*105 I. Compliance with Case Plan
McKinney first argues that he complied with all requirements of the case plan and that DHS did not prove, and the termination order did not state, that he had not substantially complied with the case plan. This argument is of no moment, as our case law is clear that even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, 489 S.W.3d 182.
II. Best Interest
Under Arkansas law, to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)-(ii). This potential-harm inquiry is but one of the many factors that a court may consider, and the focus is on the potential harm to the health and safety of a child that might result from continued contact with the parent. Tadlock v. Ark. Dep't of Human Servs. , 2009 Ark. App. 841, 372 S.W.3d 403. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. Id. Furthermore, the potential-harm analysis should be conducted in broad terms. Id.
McKinney challenges the circuit court's potential-harm finding and argues that DHS's assertion that he posed a risk of potential harm based on A.M.'s injuries was "dubious" because the identity of the offender was unclear. McKinney contends that there was no testimony that he caused the injuries to A.M. and, while acknowledging the finding at adjudication that he was the abuser, notes that Mercado later came forward claiming responsibility for the injuries. McKinney also asserts that there was no testimony given on the likelihood of adoption.
McKinney's status as A.M.'s abuser is considered an established fact because he did not appeal from the adjudication order that made that finding. In Villasaldo v. Arkansas Department of Human Services , 2014 Ark. App. 465, 441 S.W.3d 62, this court noted that Villasaldo had not appealed from the adjudication order in which the circuit court found that she failed to protect J.G. from abuse. After noting that a parent's failure to appeal the rulings made in an adjudication order precludes appellate review of those rulings in an appeal from a subsequent order, we held that we would not question whether Villasaldo had failed to protect her son from abuse "because that fact has been established." 2014 Ark. App. 465, 441 S.W.3d at 66.
The same holds true here-we will not question whether McKinney was the cause of A.M.'s injuries, because that fact has been established. And the fact that McKinney perpetrated severe abuse on A.M. supports the court's finding that the children faced potential harm if returned to McKinney's home. McKinney essentially asks this court to reweigh the evidence on this issue, which we will not do. As to evidence of adoption, the circuit court found, and we agree, that it made no legal difference whether the children were adoptable, as the children were to remain in the custody of their mothers.
McKinney also mentions other reasons that termination was not in the children's best interest, such as the cessation of child *106 support, the lack of a father figure in the children's lives, and the loss of extended family. However, the circuit court heard testimony on these issues and is presumed to have considered them in determining best interest, and we will not second-guess that determination.
III. Statutory Grounds
McKinney's argument as to the statutory grounds for termination consists of the following:
The Department and Attorney Ad Litem did not provide clear and convincing evidence that any of the statutory grounds for termination of parental rights were met. Appellant completed the case plan, and had no need to remedy the situations that caused removal because he did not injure the child, A.M., the injury which spurred this case.
To the extent that McKinney is repeating his arguments as to compliance with the case plan and his status as A.M.'s abuser, those arguments have been addressed above. The remainder of McKinney's argument is conclusory and develops no argument based on the elements of the statutory grounds for termination; therefore, we will not address it. See Todd v. Ark. Dep't of Human Servs. , 85 Ark. App. 174, 151 S.W.3d 315 (2004) (when a party cites no authority or convincing argument on an issue and the result is not apparent without further research, the appellate court will not address the issue).
Affirmed.
Gruber, C.J., and Glover, J., agree.

Mercado's parental rights to A.M. were later terminated, and this court affirmed the termination. Mercado v. Ark. Dep't of Human Servs. , 2017 Ark. App. 495, 2017 WL 4399856.

McKinney had full custody of K.M.1 and K.M.2 and exercised regular visitation with J.M.

McKinney and Mercado were married on 27 June 2016 and divorced on 7 December 2016.