N. MARK KLAPPENBACH, Judge
Appellant Lesley Bridges appeals the June 20, 2018 order of the Saline County Circuit Court that terminated her parental rights to her three-year-old son, LL. Bridges does not challenge the circuit court's finding that there were statutory grounds on which to terminate her parental rights. On appeal, Bridges challenges the circuit court's finding that termination of her parental rights is in LL's best interest, specifically contesting that there was potential harm to LL if returned to his mother's custody. Bridges asserts that the circuit court clearly erred and that the termination order must be reversed. We affirm.
We review termination-of-parental-rights orders de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. Harjo v. Ark. Dep't of Human Servs. , 2018 Ark. App. 268, 548 S.W.3d 865. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. Id. We must also defer to the superior position of the circuit court to weigh the credibility of the witnesses. Ewasiuk v. Ark. Dep't of Human Servs. , 2018 Ark. App. 59, 540 S.W.3d 318. On appellate review, this court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it. Id. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Id.
Pursuant to Arkansas Code Annotated section 9-27-341(b)(3) (Repl. 2017), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will *509 be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. The order must also find by clear and convincing evidence one or more grounds. Ark. Code Ann. § 9-27-341(b)(3)(B).
The purpose of the termination-of-parental-rights statute, Ark. Code Ann. § 9-27-341(a)(3), is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. Blasingame v. Ark. Dep't of Human Servs. , 2018 Ark. App. 71, 542 S.W.3d 873. A parent's past behavior is often a good indicator of future behavior. Ewasiuk , supra .
In this case, the circuit court found that there were multiple statutory grounds on which to terminate the mother's parental rights. Appellant does not contest the sufficiency of the evidence of statutory grounds. The circuit court also found that it was in LL's best interest to terminate parental rights. Under the umbrella of the child's best interest, the circuit court specifically considered that LL was "highly adoptable" with hundreds of families interested in adopting LL or a child sharing his characteristics. Appellant does not contest whether there was sufficient consideration of LL's adoptability.
The other factor that must be considered when deciding what is in the child's best interest is whether the child would be subjected to potential harm if returned to his parents. Appellant asserts on appeal that the circuit court clearly erred in its best-interest finding because of a lack of potential harm to LL if returned to his mother. In sum, appellant contends that she complied with the case-plan requirements, that she had appropriately cared for her son during unsupervised visitations, that she eventually admitted she needed drug treatment, and that she was doing well ever since she embraced treatment and sobriety. We disagree that she has demonstrated clear error in the circuit court's best-interest finding.
A more amplified recitation of the evidence is necessary to explain our decision. In November 2016, the Department of Human Services (DHS) sought emergency custody of LL, who was then eighteen months old, based on severe injuries that his two-month-old sibling JL had suffered. Appellant took JL to the emergency room, but this was apparently several hours after JL had been injured. The history of injury did not match JL's conditions, so DHS was notified. JL died from his extensive brain injuries. The father was arrested, ultimately convicted of murder, and sentenced to prison.
In March 2017, appellant stipulated that LL was dependent-neglected, in part due to the delay in seeking medical treatment for JL. Appellant was given a case plan and ordered to complete certain services. In June 2017, appellant was deemed compliant with her case plan, having maintained stable housing and employment, having participated in counseling, and having had successful unsupervised visitation. After a review hearing in September 2017, the circuit court found that appellant had continued her pattern of compliance with the case plan.
A permanency-planning hearing was conducted in November 2017. At that time, *510 the circuit court was encouraged by appellant's compliance but remained concerned about her emotional stability, which affected her ability to properly protect LL from harm. Appellant's visitation was ordered to be gradually increased if recommended by her therapists.
In February 2018, a fifteen-month permanency-planning hearing was conducted. At that point, appellant was no longer diligently working toward reunification. Appellant had lost a job, and she had tested positive for methamphetamine. Appellant admitted that she had been hiding her use of methamphetamine over the previous year. The circuit court noted that appellant attended only two domestic-violence support-group meetings and that domestic violence had brought LL into DHS's custody. The circuit court changed the goal of this case to termination of parental rights and adoption.
DHS filed a petition to terminate alleging in part that LL's best interest would be served if termination was granted because appellant continued to use drugs and that drug use affected her ability to safely parent her son. The termination hearing was conducted in May 2018, eighteen months after LL had come into DHS's custody.
The evidence showed that a caseworker became concerned about appellant in October 2017 because of appellant's recent rapid weight loss and sores on her face. The caseworker visited appellant's home in early 2018, but the home was in disarray and not environmentally appropriate, so LL's visit was cancelled. The caseworker described appellant as nervous and emotional, and she said that appellant spilled the cup of urine that was supposed to be used for a drug test. Appellant submitted to a hair-follicle test that was positive for methamphetamine. Appellant was referred for drug treatment in February 2018, but she was discharged for noncompliance in March 2018. Appellant restarted treatment in April 2018, and at that time she was given a urine drug test that was positive for methamphetamine. Thereafter, appellant began to work the drug-treatment protocol.
Appellant testified at the termination hearing and admitted that she had been using drugs intermittently, meaning several times a month, since March 2017, but she thought she could stop on her own and she was too ashamed to admit it to DHS until March 2018. She claimed that she never used while LL was with her nor would she ever do that, and she said that she had absolutely benefitted from all the other therapies she had attended. Appellant's sponsor was supportive of appellant, testifying that appellant had worked the initial sobriety steps and had been very diligent in her efforts to be sober for the last three months. Appellant's counselor, who had treated appellant for more than a year, believed that appellant had been "super engaged" with her individual therapy and had made great strides in her parenting skills. Appellant's caseworker believed that termination of parental rights was proper because appellant had been so deceitful and had achieved only short-term sobriety.
The circuit court rendered its decision from the bench. The circuit court remarked that appellant was a thirty-seven-year-old intelligent woman who was to be commended for her attempts to address her addiction problem "in the last month or so." The circuit court nonetheless weighed this against LL's having been in foster care for so long, LL's need for permanency, and the detriment of further delay. The circuit court stated that it was unconvinced that it could rely on appellant's recent sobriety to continue, that her deceptive behavior was stopped only because *511 she was about to be caught and not because she was ashamed of her drug use, that she had put her own interests before her son's for more than a year, and that it was "clearly" in LL's best interest to grant the petition to terminate her parental rights.
An order was subsequently filed to memorialize all the circuit court's findings relative to the termination of appellant's parental rights. Concerning "potential harm," the circuit court found that LL's father had murdered LL's infant sibling; that appellant did not appropriately address the issues of domestic violence; that appellant had a serious drug-abuse issue that she intentionally hid; and that appellant's recent sobriety was undercut by her "many months of deceit." The circuit court concluded that LL had been in foster care for well beyond a year and that three more months to work on sobriety was not warranted in this case. This timely appeal followed.
Appellant argues on appeal that the evidence was wholly insufficient to support the court's findings on potential harm, even considering the late discovery of appellant's drug use, and that, at a minimum, she should have been given three more months to firmly establish her sobriety. She argues that she actively participated in all the services offered to her, she improved greatly, she worked and had a suitable home, and she had taken care of LL during her unsupervised visits without incident. We disagree that appellant has demonstrated reversible error.
In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or affirmatively identify a potential harm. Gulley v. Ark. Dep't of Human Servs. , 2016 Ark. App. 367, 498 S.W.3d 754. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122. The risk for potential harm is but one factor for the court to consider in its best-interest analysis. Abdi v. Ark. Dep't of Human Servs. , 2018 Ark. App. 173, 544 S.W.3d 603. This court has consistently noted that continuing drug use demonstrates potential harm to children. Jackson , supra . Moreover, credibility determinations are for the circuit court to make, not this court. Id.
In this case, the circuit court was unconvinced that appellant had made significant material progress toward lasting sobriety. See Hollinger v. Ark. Dep't of Human Servs. , 2017 Ark. App. 458, 529 S.W.3d 242. The circuit court was not required to, and did not, believe appellant's self-serving testimony that she deceived DHS about her drug use only because she was ashamed. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. The circuit court considered appellant's newfound efforts toward being drug free and applauded her efforts in that regard, yet this simply did not outweigh LL's need for permanency after eighteen months in foster care. Appellant apparently started using drugs after DHS had begun providing reunification services to her. Appellant's drug use continued throughout the remainder of this DHS case, and she tested positive for methamphetamine in April 2018, one month before the termination hearing. While the circuit court was certainly not required to terminate parental rights eighteen months into this case, the circuit court was likewise not required to extend the case three more months. We are not *512 left with a distinct and firm impression that the circuit court made a mistake in its findings on LL's best interest. We therefore affirm the termination of appellant's parental rights.
Affirmed.
Virden and Whiteaker, JJ., agree.