Cite as 2019 Ark. App. 388

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-181

| | |
|---|---|
| ARIC DANES | **Opinion Delivered:** September 18, 2019 |
| APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. 36JV-17-53] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE, JUDGE KEN D. COKER, JR. |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## MEREDITH B. SWITZER, Judge

Aric Danes appeals the Johnson County Circuit Court's termination of his parental rights to his daughter, J.W., born April 18, 2017.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), his counsel has filed a no-merit brief setting forth all adverse rulings from the termination hearing and asserting there are no issues that would support a meritorious appeal. Counsel has also filed a motion asking to be allowed to withdraw. The clerk of this court notified Danes of his right to file pro se points. Danes has filed no pro se points. We affirm the order terminating Danes's parental rights and grant counsel's motion to withdraw.

---

[1]Katherina Waugh, J.W.'s mother, consented to the termination of her parental rights on July 17, 2018. The circuit court entered a separate order on September 24, 2018, terminating her parental rights. She is not a party to this appeal.

## I. *Standard of Review*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Rylie v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 366, 554 S.W.3d 275. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted, and the potential harm caused by returning custody of the child to the parent. *Id.* Each step requires proof by clear and convincing evidence, which is the degree of proof that will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Id.*

Appellate review for parental termination cases is de novo, and our inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Griffin v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 635. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Id.*

## II. *Facts*

On July 20, 2017, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect with respect to J.W. The affidavit attached to the petition averred that J.W. was removed from the custody of her mother, Katherina Waugh, on July 17, 2017. Waugh and J.W. had been living with Danes, who

2

was identified as Waugh's boyfriend and J.W.'s putative father. There was no food in the home, there was no refrigerator, and it was unknown if the home had electricity. J.W. was removed from Waugh's custody due to Waugh's mental instability and inability to care for J.W. An ex parte order of emergency custody was entered the same day. A probable-cause order was entered on July 26, and J.W. was adjudicated dependent-neglected in an order entered August 22. The adjudication order directed Danes to submit to random drug screens; attend and complete parenting classes; obtain and maintain stable and appropriate housing; obtain and maintain stable and gainful employment; attend counseling as recommended; submit to a psychological examination and follow any recommendations; and submit to a paternity test.

In a review order entered on November 28, the circuit court found Danes had complied with the case plan (Waugh had not); Danes was determined to be J.W.'s legal father; and the goal of the case remained reunification. The circuit court entered additional review orders on January 23 and April 17, 2018; the goal of the case remained reunification, but there was no finding as to whether Danes was in compliance with the case plan in either order.

A permanency-planning hearing was held on July 17, 2018, the same day Waugh filed her consent to terminate her parental rights to J.W. The circuit court entered the permanency-planning order on July 31, changing the goal of the case from reunification to adoption.

DHS filed a petition to terminate Danes's parental rights on August 17, 2018, alleging four bases: (1) J.W. had been adjudicated dependent-neglected and had continued out of

3

Danes's custody for a period of twelve months, and despite a meaningful effort by DHS to correct the conditions causing removal, the conditions had not been remedied; (2) J.W. had lived outside Dane's home for a period of twelve months, and Danes had willfully failed to provide significant material support in accordance with his means or to maintain meaningful contact with J.W.; (3) Danes had abandoned J.W.; and (4) other factors arose subsequent to the filing of the original petition for dependency-neglect that demonstrate placement of J.W. in Danes's custody is contrary to her health, safety, and welfare, and that, despite the offer of appropriate family services, Danes had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevented the placement of J.W. in his custody. In a termination hearing held on November 20, the circuit court terminated Danes's parental rights, finding it was in J.W.'s best interest and that DHS had proved the twelve-months-failure-to-remedy and subsequent-factors grounds.

At the termination hearing, Danes testified he had moved several times during the case. At one residence, not only were there child-safety issues, there were also issues regarding people moving in and out of his home and his failure to inform DHS of these people. Danes stated that he currently had a two-bedroom apartment where he lived with his fiancée that was appropriate for J.W. Danes was unemployed at the time of the termination hearing due to injuries suffered in a scooter accident, but he testified that he was supposed to begin work at Subway the Saturday after the termination hearing, even though he was not yet cleared to return to work due to his injuries. Danes admitted he had "pointed out" due to excess absences at Tyson after only eight months of employment, quit OK Foods after approximately four months due to excess absences, worked for both

4

Simmons and Sonic concurrently for approximately two weeks before he realized he could not work two jobs and left Simmons, and worked at Sonic for a total of one month before he was injured in his scooter accident.

As to visitation with J.W., Danes acknowledged he had not attended all his scheduled visits with J.W., especially since his accident. He admitted that as of the November 2017 review hearing, he had attended 5 of 16 scheduled visits; as of April 2018, had attended 10 of 35 visits; as of July 2018, he had attended 10 of 50 visits (with no visits made between March 2018 and July 5, 2018); and of the 68 total visits he had been offered, Danes agreed that if DHS reported he had attended only 19, that sounded "about right" to him. Excuses Danes gave for missing visitation included the following: he got visitation dates "mixed up"; he was looking for a job; and he was trying to find parenting classes to attend because the case worker told him he was not allowed to complete the parenting classes he had begun. He also said he had not visited due to his accident but admitted he had not called DHS to inform anyone, and he had not asked if visits could be scheduled around his doctor appointments. He admitted his visits with J.W. had been difficult because she would scream and cry at times, but he stated there were times J.W. smiled during visitation. Danes admitted he did not presently have anything in his home for J.W.; although he had a crib in storage, he estimated it would take him about a month to get everything together he needed.

Danes testified he was dismissed from his first parenting class due to his behavior and his second parenting class due to failure to attend. On his third attempt, he said he quit doing the written work after his case worker told him he was not going to graduate and

receive the parenting certificate. He did obtain his parenting certificate in July 2018. Danes admitted his driver's license was suspended, and he had active warrants in Franklin County and Pope County, but he was unaware he also had an active warrant in Sebastian County. Danes testified that his disability income is $725 a month.

Amy Vaughn, J.W.'s caseworker from July 2017 to August 2018, testified Danes moved "quite a bit" during the time she worked on the case. On the night J.W. was removed, there was nothing in the home for the baby, there were roaches, and there was no food in the house. In Danes's next residence there were child-safety hazards, and several times there were people in the home Vaughn did not know who would not identify themselves when asked, including a man who claimed to be a homeless friend of Danes. In Vaughn's opinion, none of Danes's residences were appropriate for a child, and they did not contain any items necessary to meet a child's needs. She testified parenting classes were a continual issue with Danes. According to Vaughn, Danes had been discharged from his first parenting classes for being rude and verbally aggressive with the director when he was not allowed to rush through the parenting materials simply to complete the process; he had been discharged from his second round of parenting classes due to poor hygiene and failure to attend classes; and during his third attempt, he would show up unclean and be rude and disruptive, again attempting to rush through the materials. When told that he would have to take the parenting classes again, he became upset and did not complete the course. Vaughn acknowledged that at the last review hearing Danes had presented a certificate indicating he had completed parenting classes in July 2018, but she testified Danes had never provided her with that proof.

Vaughn described Danes's visits with J.W. as "traumatic" for the child. J.W. would scream uncontrollably and was inconsolable until someone retrieved her from the visitation room to calm her down. Visitation was attempted in different environments, such as the hallway or an office, but the results were the same—J.W. would not calm down until someone removed her from Danes. Vaughn said J.W. would go to complete strangers without crying and would even allow complete strangers to console her and calm her down. Visits were moved to McDonald's at one point, and while they were better there due to all the distractions, J.W. still always wanted a caseworker or one of her foster parents to be in her line of sight. Vaughn testified there was no bond between Danes and J.W., and he would not accept any redirection as to parenting techniques; his mindset was that he was going to do it his way.

Ashley Elam, the caseworker who took over J.W.'s case after Vaughn's departure, testified that even after the goal of the case changed to adoption, DHS continued to provide services to Danes. She testified that in Danes's current residence, there was limited furniture for the adults, and there were no baby items for J.W. Elam said nothing had changed with visitation—J.W. still preferred to go to a complete stranger rather than to Danes. Elam testified that during visitation, J.W. would throw fits until she almost became physically ill, crying so much she would begin to cough. Elam stated that while the last visit was better, she attributed it to J.W.'s being surrounded by new toys rather than wanting to spend time with Danes. Elam also testified that J.W.'s foster parents were interested in adopting her.

In terminating Danes's parental rights, the circuit court stated that what "stuck out" was J.W.'s intensely fearful reaction to her father during visitation, even when visitation

7

locations were changed. The circuit court that held it was in J.W.'s best interest for Danes's parental rights to be terminated, finding there would be significant potential harm to J.W.'s health and safety due to J.W.'s physical reaction to Danes and the fact Danes was unable to demonstrate he had acquired any parenting skills, despite multiple efforts to do so, including being able to console J.W. when she was intensely distraught. The circuit court noted Danes had nothing at his home for J.W., despite the case having been open for sixteen months, and it did not see Danes being able to adequately care for J.W. within a reasonable period of time. The circuit court was further concerned with Danes's lack of visitation, noting he had attended only 19 of 68 visits, and at one time went three months without visiting. The circuit court further noted the likelihood of adoption by the foster parents. Danes's parental rights were terminated on both the twelve-months–failure-to-remedy and subsequent-factors grounds.

### III. *Discussion*

Counsel first addresses the sufficiency of the evidence to terminate Dane's parental rights. While the circuit court terminated his parental rights on two grounds, there need be proof of only one ground to support the circuit court's decision to terminate. *Allison v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 424. Danes's counsel discusses the subsequent-factors ground for the purposes of his brief. This ground requires proof that subsequent issues arose after the original petition was filed that demonstrate it is contrary to the juvenile's health, safety, or welfare to place the juvenile with the parent; DHS must offer appropriate family services; and there must be evidence the parent is indifferent or lacks the capacity to remedy the subsequent factors or rehabilitate the parent's circumstances that prevents

8

placement of the juvenile with that parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (Supp. 2017). The trial court's finding that this ground was proved by clear and convincing evidence is not clearly erroneous.

The evidence clearly demonstrated Danes failed to exercise his visitation with J.W. on a consistent basis, attending only 19 of 68 visits provided by DHS. When he did exercise his visitation, J.W. was exceptionally fearful of him, to the point of making herself almost physically ill. J.W. would go to complete strangers over Danes, and she always had to have either a caseworker or one of her foster parents in her line of sight when Danes was with her. There was no bond between Danes and J.W., the visits were traumatic for J.W., and Danes was not capable of calming J.W. Danes also did not complete his parenting classes in a timely fashion, taking a year to do so and being dismissed from the classes on his first three attempts. Testimony revealed Danes would not take direction from caseworkers during visitation, and he was determined to parent his own way. At the termination hearing, Danes's only source of income was his disability check, although he was about to begin a new job at Subway. He had outstanding warrants in multiple counties. Danes had nothing for J.W. in his current residence, and he testified it would take him another month to gather the things he needed to bring J.W. home. Failure to comply with a case plan and instability, as demonstrated herein, are sufficient to support the subsequent-factors ground. *Smith v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 380, 555 S.W.3d 896.

There was also proof that DHS provided appropriate services. DHS continued to offer visitation, even though Danes exercised his visitation sporadically. DHS also offered

Danes multiple attempts at parenting classes. DHS continued to offer these services even after the goal of the case had been changed to adoption.

The circuit court also found it was in J.W.'s best interest to terminate Danes's parental rights. A best-interest finding must be based on the circuit court's consideration of at least two factors: (1) the likelihood that the child will be adopted if parental rights are terminated, and (2) the potential harm caused by continuing contact with the parent. *Baxter v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 508. It is the overall evidence, not proof of each factor, that must demonstrate termination is in the child's best interest. *Id.*

The unrebutted evidence from Ashley Elam indicated J.W. is adoptable and that her foster parents are interested in adopting her. The caseworker's testimony is sufficient to support the likelihood-of-adoptability finding. *Arnold v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 300, 578 S.W.3d 329.

The potential-harm analysis is to be conducted in broad terms—the circuit court must consider the harm to the child's health and safety that might result from continued contact with the parent; there is no requirement to find actual harm would result or to identify the potential harm. *Barnes v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 525. The evidence revealed that when J.W. had visits with Danes, she would scream uncontrollably to the point of making herself almost physically ill, and she would have to be removed from the situation in order to calm down. Testimony indicated that there was no bond between Danes and J.W., and in fact, the visits were traumatic for J.W. Placing J.W. with Danes would certainly pose potential harm to her mental health. *See Norris v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 571, 567 S.W.3d 861.

10

Counsel also points out that the termination decision was a denial of Danes's request for further time and could possibly constitute an adverse ruling. However, this case had been open for sixteen months, and a child's need for permanency and stability may override a request for additional time to improve a parent's circumstances. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495.

There was one adverse ruling abstracted but not discussed by counsel—the refusal of Danes's request for a last visit with J.W. However, even if an adverse ruling is omitted from a no-merit brief in a termination case, the termination may still be affirmed if the ruling clearly would not constitute a meritorious ground for appeal. *Beaty v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 621, 534 S.W.3d 190. The refusal of a last visit had no bearing on the merits of the termination of Danes's parental rights.

Counsel concludes that the record clearly and convincingly supports the decision of the circuit court to terminate Danes's parental rights, and any argument challenging the statutory grounds or challenging the best-interest finding would be wholly frivolous. We agree the appeal is without merit. We affirm the termination of Danes's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VIRDEN and VAUGHT, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

One brief only.

11