Cite as 2019 Ark. App. 474

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-529

| | |
|---|---|
| TIJUANNA CRAWFORD<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** October 23, 2019<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-16-178]<br><br>HONORABLE CARLTON D. JONES, JUDGE<br><br><br><br>AFFIRMED |

### N. MARK KLAPPENBACH, Judge

This appeal arises from the circuit court's March 29, 2019 order terminating the parental rights of Tijuanna Crawford to her four children, KC, JM, DC, and DC1. No putative or legal father participated in these proceedings.[1] The children were removed from their mother's legal custody in September 2016 by the Arkansas Department of Human Services (DHS). Crawford was incarcerated at that time, and the children were taken from their maternal grandmother, who was deemed an unfit caregiver. The circuit court found that, after approximately two and a half years during which reunification services had been provided, the mother failed to demonstrate that she could provide a safe and stable home for her children. The circuit court found that DHS proved four statutory grounds on which

---

[1]The putative father of DC and DC1 did not establish significant contacts with those children in order for parental rights to attach. The putative father of KC and JM is deceased.

to terminate her rights, and it also found that it was in the children's best interest to terminate her parental rights. Crawford appeals and argues that the lack of express written findings of fact in the order requires reversal and remand to the circuit court to issue explicit findings of fact underpinning its legal conclusions. We affirm.

In this case, DHS alleged, and the circuit court found that it proved, four statutory grounds provided in Arkansas Code Annotated section 9–27–341(b)(3)(B)(Supp. 2017) against Crawford: (1) one year out of custody and failure to remedy; (2) willful failure to provide significant support or to maintain meaningful contact with the children; (3) subsequent other factors preventing reunification; and (4) aggravated circumstances with little likelihood of reunification. In its order, the circuit court stated that it considered "the testimony, exhibits, statements of the parties and counsel, the record herein, and other things and matters presented," and it set out each of the statutory grounds with particularity. The order did not elaborate on the evidence that supported each statutory ground. Crawford's appellate argument is a procedural one, not substantive. Crawford's argument is unconvincing.

Crawford did not request specific findings of fact from the circuit court, nor can she cite any authority for the proposition that the court in this termination proceeding is otherwise obligated to expressly make specific findings of fact to support each of its findings on statutory grounds and best interest absent a request to do so. *See Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. The failure of a party to request special findings of fact amounts to a waiver of that right. *Smith v. Quality Ford, Inc.*, 324 Ark. 272, 276, 920 S.W.2d 497, 499 (1996). In the absence of a statute or rule requiring specific

2

findings of fact or a timely request for specific findings under Arkansas Rule of Civil Procedure 52, the appellate court will ordinarily presume that the trial court made the findings necessary to support its judgment. *See Curry v. Pope Cty. Equalization Bd.*, 2011 Ark. 408, 385 S.W.3d 130; *Marshall v. Rubright*, 2017 Ark. App. 548; *Chaffin, supra*; *Am. States Ins. Co. v. Williams*, 2010 Ark. App. 840. "[W]hen the trial court fails to make certain findings of fact, the appellate court, under its de novo review, may nonetheless conclude that the evidence supported the decision." *Chastain v. Chastain*, 2012 Ark. App. 73, at 12, 388 S.W.3d 495, 502 (citing *Hamilton v. Barrett*, 337 Ark. 460, 989 S.W.2d 520 (1999)). In determining whether the circuit judge clearly erred in a finding, the appellate court may look to the whole record to reach that decision. *Stehle v. Zimmerebner*, 375 Ark. 446, 455, 291 S.W.3d 573, 580 (2009). Indeed, de novo review of the evidence makes it incumbent on the appellate court to review the entire record of the evidence presented to the circuit court. *See ConAgra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 678, 30 S.W.3d 725, 729 (2000).

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. We review termination-of-parental-rights cases de novo. *Id.* The grounds for termination of parental rights must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.*

To the extent that Crawford contends there is insufficient evidence on which to terminate her parental rights, we disagree. In our de novo review of this record, if any one of the four alleged statutory grounds has been adequately supported, then we will not reverse

the circuit court's order as to grounds. *McDaniel v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 335, 579 S.W.3d 184. For purposes of appeal, we focus on the subsequent-other-factors ground, and this record supports the circuit court's order.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)* sets forth the subsequent-other-factors ground for termination: that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the children in the custody of the parent is contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the children in the custody of the parent. *See also Arnold v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 300, 578 S.W.3d 329. In ruling from the bench, the circuit court stated that it did not know whether the problem was Crawford's incapacity or her lack of motivation to fix the situation that was preventing the return of the children to her custody. The circuit court stated that, since her children's removal, Crawford had been rearrested and had tested positive for drugs, and she initially testified at the termination hearing that she would not test positive for drugs but ultimately admitted that she had taken an illegal drug the previous day.

Our de novo review of this record amply supports the finding in the termination order that DHS proved the subsequent-other-factors ground. The children had been removed in September 2016 from their grandmother's custody, given that Crawford was incarcerated. A psychological examination revealed that Crawford has an extremely low IQ; that her drug of choice was marijuana, but she also used cocaine; that she had never had

4

drug treatment; that she has emotional issues including bipolar disorder, for which she should attend counseling and be medicated; and that her visitation should be supervised. Over the next two years, services were provided to Crawford, and she intermittently attempted to work the case plan, but she was in and out of prison, she left her mental-health issues and drug-abuse issues untreated, she failed to maintain employment, and she visited her children at times but not consistently.

The termination hearing was conducted in March 2019 at which time the children ranged in age from thirteen to three, and they had been out of Crawford's custody approximately two and a half years. Over the course of this DHS case, Crawford tested positive several times for amphetamines and methamphetamine and once for THC. Since the case had been open, Crawford has been incarcerated for approximately 280 days in three different states, she had moved residences at least ten times, DHS had no information on Crawford's current residence, and she had not maintained a steady job. Crawford had long-standing substance-abuse issues, and she had significant emotional problems for which she needed counseling that she did not attend. Crawford had not visited her children at all since October 2018. Crawford had another baby, but he was presently living with a relative. Crawford stated that she was moving again soon to another apartment.

In short, DHS's evidence showed that after all this time, Crawford lacked the stability that the children needed. Crawford was unwilling or unable to face her mental-health and substance-abuse issues, to stay out of criminal trouble, or to be the parent that her children need. The circuit court did not clearly err in finding that the subsequent-other-factors statutory ground was proved.

5

To the extent Crawford argues that the circuit court's best-interest finding is flawed, we disagree. The circuit court found that it was in the children's best interest to terminate parental rights, having taken into consideration (1) the likelihood that the children would be adopted and (2) the potential harm to them if returned to their mother's custody.

The testimony showed that the oldest child, KC, was living in a therapeutic foster home, and she had some behavioral issues that were being addressed with counseling, but she was otherwise doing well. The CASA supervisor did not think that KC was presently adoptable due to her emotional problems, but with continued treatment, she would be. JM was serving ninety days in a juvenile facility for committing a terroristic act, and he had some aggression issues, but DHS was working on getting him into a long-term residential placement. The DHS supervisor and the CASA supervisor both believed that finding JM an adoptive home would be difficult, but that with proper treatment, he could be adopted. DC had been in the same foster home the entire time and was in play therapy for behavioral issues. DC1 had been in the same foster home the entire time, although not with DC, and he was doing well. The adoption specialist opined that all the children were adoptable, especially the young ones, DC and DC1, who were physically healthy and had no issues preventing adoption. The adoption specialist acknowledged that KC and JM both had behavioral issues, JM more so than KC, but believed that their issues could be modified and stabilized given that they were both getting treatment and they were both young and physically healthy. The adoption specialist's goal was to have the children adopted as a sibling group. As already described, Crawford was in no position to take her children after more than two years of services, so there was evidence of potential harm in returning them

6

to her. Our de novo review of the evidence in this case supports the circuit court's best-interest finding, so we cannot say that it is clearly erroneous.

In summary, we reject Crawford's argument on appeal that the circuit court was required to "make express findings of fact in its written order" to support the statutory grounds and best interest of the children, particularly in the absence of a request by Crawford of the circuit court to do so. Furthermore, our de novo review of the evidence leads us to conclude that the circuit court did not clearly err in finding that statutory grounds had been proved and that it was in the children's best interest to terminate Crawford's parental rights.

Affirmed.

HARRISON and SWITZER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.