Cite as 2022 Ark. App. 138

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-21-510

| | |
|---|---|
| KERRI YOUNGER AND CHRISTOPHER WOMACK<br><br>                                APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>                                APPELLEES | Opinion Delivered March 30, 2022<br><br>APPEAL FROM THE YELL COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 75NJV-20-12]<br><br><br>HONORABLE TERRY M. SULLIVAN, JUDGE<br><br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

The Yell County Circuit Court terminated the parental rights of appellants Kerri Younger and Christopher Womack to their three children, C.W.1 (born in 2009) and twins, C.W.2 and C.W.3 (born in 2011). The parents have filed separate appeals challenging the sufficiency of the evidence supporting grounds for termination. Womack also argues that the trial court erred in determining that termination of his rights is in his children's best interest. We affirm the trial court's decision as to both parents.

I. *Background*

The Arkansas Department of Human Services (DHS) removed C.W.1, C.W.2, and C.W.3 from Younger's custody on May 20, 2020. In an affidavit attached to the petition for

emergency custody, a DHS family-service worker (FSW) attested that on May 4, someone had reported to the hotline that the children had seen Younger chopping up a white powdery substance with a credit card and ingesting it with a straw. The affidavit also indicated that DHS has been involved with the family since 2016 and that Younger has a history of drug charges for which she is on probation. The children were interviewed at the Children's Advocacy Center in Benton County, and concern was expressed about "the amount of drug information these children had." The FSW eventually reached Younger at her parents' home. She denied the allegations of drug use and agreed to a drug screen but could not produce a sample, saying that she has kidney disease. The FSW was contacted by Younger's family members, who were said to be fearful about the children's safety due to Younger's drug use. Womack was identified as the putative father. At the time of the removal, Womack was in a drug-rehabilitation program and living with his sister.

Younger was instructed to comply with standard welfare orders. The children were adjudicated dependent-neglected on July 24, 2020, due to (1) parental unfitness as a result of the parents' drug use, which affected their ability to supervise, care for, and protect the children; and (2) environmental neglect based on the parents' failure to provide a safe and appropriate home for the children. The trial court ordered Younger and Womack to follow the case plan and court orders; cooperate with DHS and keep DHS informed; watch "The Clock is Ticking" video and complete parenting classes; obtain and maintain stable housing and employment; remain drug-free and submit to random drug screens; and, if requested by

DHS, submit to a drug-and-alcohol assessment and a psychological evaluation and attend AA/NA meetings.

The case was reviewed in November 2020. The trial court found that Younger and Womack were "in total noncompliance" with the case plan and court orders and that they were also homeless and unemployed. Among other things, the trial court ordered that the parents would be given only five minutes to log on to attend visitation with their children via Zoom and that they were to submit to a drug screen following the review hearing.

The case was reviewed again in February 2021. The trial court kept the goal as reunification but added a concurrent goal of adoption following termination of parental rights because of the parents' lack of progress. The trial court found that neither parent had complied with the case plan and court orders, including that they obtain stable housing and income, submit to random drug screens and hair-follicle testing, and stay after the previous hearing to be drug tested. Younger and Womack had submitted to a psychological evaluation, but they continually refused to watch "The Clock is Ticking" video and had not completed all twelve hours of parenting classes. The trial court noted that Younger had missed twenty-eight Zoom visits with the children, nineteen of which were "no-shows," and had been late to an additional seven visits. Womack had missed nineteen Zoom visits with the children, seventeen of which were "no-shows," and had been late to an additional seven visits. The trial court further found that both parents were then incarcerated in Benton County on, among other charges, possession-of-drug-paraphernalia and theft-by-receiving charges and that both parents were already on probation in Oklahoma stemming from drug

offenses in 2017. Womack had additional driving-related charges pending in Benton County and had active warrants in Perry and Franklin Counties. Younger was on probation in Pope County from drug charges in 2018. Both parents had legal issues pending.

In May 2021, DHS filed a petition to terminate Younger's and Womack's parental rights to all three children on five grounds under Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021): (i)*(a)* & *(b)* (one-year failure to remedy after removal from custodial and noncustodial parent); (ii)*(a)* (willful failure to provide significant material support and to maintain meaningful contact); (vii) (subsequent factors or issues); (viii) (sentenced in a criminal proceeding); and (ix)*(a)(3)(A)* & *(B)(i)* (aggravated circumstances—little likelihood that services will result in successful reunification).

In a permanency-planning order entered in June 2021, the trial court changed the goal of the case from reunification to adoption following termination of parental rights. The trial court found that the parents had not complied with the case plan and court orders, did not have a stable home, had active warrants, and had felony charges filed against them since the last hearing. In addition, Womack had tested positive for methamphetamine on a hair-follicle test in May. The trial court also noted that "as shown by their testimony today, they do not see a problem with their actions."

A termination hearing was held in July 2021. The trial court heard testimony from both parents, along with FSW Kiley Burge. Following the hearing, the trial court terminated Younger's and Womack's parental rights to the children on at least three grounds, including one-year failure to remedy, subsequent factors or issues, and aggravated circumstances. The

trial court found that Burge had offered credible testimony that the children are highly adoptable due to their personalities, ages, and good physical health. The trial court further found that the children would be at risk of potential harm if returned to the parents due to their failure to comply with the case plan, their lack of any stability, and their continuous drug use and criminal activities.

## II. *Standard of Review*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3), an order forever terminating parental rights shall be based on clear and convincing evidence of one or more grounds. Ark. Code Ann. § 9-27-341(b)(3)(B). Proof of only one statutory ground is sufficient to terminate parental rights. *Burks v. Ark. Dep't of Human Servs.*, 2021 Ark. App. 309, 634 S.W.3d 527. The trial court must also find by clear and convincing evidence that termination is in the best interest of the child, including consideration of the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, termination-of-parental-rights cases are reviewed de novo. *Burks, supra*. Grounds for termination must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id*. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing

5

court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Bridges v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 50, 571 S.W.3d 506. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* We must also defer to the superior position of the trial court to weigh the credibility of the witnesses. *Id.* The trial court is in a far superior position to observe the parties before it. *Id.*

In deciding whether to terminate parental rights, the trial court has a duty to look at the entire picture to determine how that parent has discharged his or her duties as a parent. *Scott v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 347, 552 S.W.3d 463. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Shaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

III.  *Discussion*

A.  The Mother

Younger challenges the grounds alleged by DHS, including grounds that we are not convinced that the trial court found and relied on for termination. Because only one ground is sufficient to terminate parental rights, *Burks*, *supra*, we will address the subsequent-factors ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*) provides as a ground that other factors or issues arose subsequent to the filing of the original petition for dependency-

6

neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Younger contends that no "legitimate" issues arose separate and apart from the reason for removal. She asserts that her arrest in February 2021 for possession of drug paraphernalia was not a legitimate subsequent factor. If Younger's arrest for possession of drug paraphernalia had been the *only* subsequent factor, we might agree with her that it was not a "legitimate" issue sufficient to support termination of her parental rights; however, there were other factors to consider.

As a preliminary matter, it seems that the trial court focused on Younger's criminal activities as evidence supporting the subsequent-factors ground. The trial court found that Younger was already on probation in Arkansas and had a "deferment" in Oklahoma and that in February 2021, she had been arrested in Benton County, which put her probation and deferment in danger of being revoked. At the termination hearing, Younger said that she is not worried about the status of her probation and "deferment" because she had resolved the matter in Benton County by going to jail. She claimed that her Oklahoma charges have been reduced to misdemeanors and that she is now paying monthly installments on her fines. She further claimed that the probation matter in Arkansas has been settled,

but she had no paperwork to confirm that. Younger said that she has an upcoming hearing on her failure-to-appear charge but that she expects her probation to be reinstated.

In this court's de novo review, we can consider other evidence that came out at the hearing to support the subsequent-factors ground. In *Crawford v. Arkansas Department of Human Services*, 2019 Ark. App. 474, 588 S.W.3d 383, this court stated that

> [i]n the absence of a statute or rule requiring specific findings of fact or a timely request for specific findings under [Ark. R. Civ. P. 52], the appellate court will ordinarily presume that the trial court made the findings necessary to support its judgment. "[W]hen the trial court fails to make certain findings of fact, the appellate court, under its de novo review, may nonetheless conclude that the evidence supported the decision." In determining whether the circuit judge clearly erred in a finding, the appellate court may look to the whole record to reach that decision. Indeed, de novo review of the evidence makes it incumbent on the appellate court to review the entire record of the evidence presented to the circuit court.

2019 Ark. App. 474, at 3, 588 S.W.3d 383, 385 (citations omitted).

In addition to her argument that her arrest was not a legitimate subsequent factor, Younger contends that her failure to complete services does not rise to the level of the subsequent factors found in *Camarillo-Cox v. Arkansas Department of Human Services*, 360 Ark. 340, 201 S.W.3d 391 (2005), in which the mother had married a convicted sex offender, and *Johnson v. Arkansas Department of Human Services*, 2015 Ark. App. 34, in which the mother was incarcerated at the time of the hearing due to her drug involvement.

We have consistently recognized that a failure to comply with the case plan and court orders may serve as a subsequent factor on which termination of parental rights can be based. *Easter v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 441, 587 S.W.3d 604. Younger was ordered to obtain stable housing and income. At the termination hearing, the court heard

testimony that Womack and Younger were living in a one-bedroom apartment belonging to another couple with special needs and that the apartment was being paid for with the disabled man's "SSI check." This court has held that "[a] stable home is one of a child's most basic needs." *Howell v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 138, at 13. Moreover, the record indicates that Younger had not held down a job for four or five years before the children were removed from her custody. Younger admitted at the termination hearing that she did not have a job over the course of the entire case, which lasted for fourteen months, until just before the termination hearing. Younger claimed that she had been acting as a part-time caregiver for the woman with whom she and Womack were living and that she had been working in that role for approximately one month. Younger said that she had recently applied for a job at Outdoor Cap where Womack works. She further testified that she has been applying for jobs, including "at every burger joint that you can think of," but that she is "too overqualified" because she has two college degrees. Younger demonstrated instability by failing to obtain housing of her own and failing to timely secure and hold down a job despite her advanced education. *Smith v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 380, 555 S.W.3d 896 (holding that failure to comply with a case plan, along with instability, is sufficient to support termination on the subsequent-factors ground).

The trial court also ordered Younger to submit to a drug-and-alcohol assessment and random drug screens. Younger testified at the termination hearing that her assessment is scheduled for after the termination hearing. Moreover, Younger claimed that she had tested negative on random drug screens and a hair-follicle test. FSW Burge, on the other hand,

testified that she had difficulty contacting Younger for random drug screens because Younger had not provided DHS with an address until much later in the case. Incidentally, Younger had been ordered to cooperate with DHS, and leaving no contact information for DHS shows a lack of cooperation. Younger had also been ordered to stay after a hearing for drug testing, but she left without being tested. Younger insisted at the termination hearing that neither she nor Womack has a drug problem. With this testimony, Younger manifested an indifference to remedying this subsequent issue given that she refused to acknowledge that she has a problem.

Moreover, Younger failed to complete parenting classes as ordered by the trial court and missed a significant number of visits with the children. Younger claimed that the number of required parenting classes had changed from six hours to twelve hours and that she could not finish the twelve hours until after classes resume in August following a break. Younger complained that she had difficulty logging on for Zoom visits and, at times, did not have a phone. FSW Burge testified that the parents had been instructed to text her if they had problems logging on and that, despite telling them that she would log on early, they would text her up to thirty minutes *after* the start time for the visit to say that they could not log on. *See Guerrero v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 160, 595 S.W.3d 437 (holding that evidence that Guerrero had never been in full compliance with the case plan and court orders, along with evidence that for the first nine months of the case, he missed eighteen visits with his child and fourteen drug screens, supported termination on subsequent-factors ground); *Danes v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 388, 585

S.W.3d 731 (holding that Danes's failure to exercise his visitation on a consistent basis, attending only nineteen of sixty-eight visits provided by DHS, was evidence supporting subsequent-factors ground).

Under these circumstances, we cannot say that the trial court clearly erred in finding that the subsequent-factors ground supported termination of Younger's parental rights.

## B. The Father

Womack also challenges all of the grounds alleged by DHS in its petition to terminate his rights. Because only one ground is necessary to support termination, *Burks*, *supra*, we will address the subsequent-factors ground found by the trial court. Much of the analysis above regarding the subsequent factors that support the termination of Younger's parental rights also applies to Womack. Womack did not obtain stable housing of his own and was instead living in a one-bedroom apartment belonging to a couple with disabilities. He explained that his incarceration had prevented him from obtaining housing approval from the U.S. Department of Housing and Urban Development, that rent had been raised on another apartment such that he could no longer afford it, and that he was currently on a waiting list for a two- or three-bedroom apartment, which may become available after the termination hearing. Regarding income, Womack testified that he had gotten a job at Outdoor Cap in April 2021—just three months before the termination hearing.

Like Younger, Womack had been ordered to submit to random drug screens and a drug-and-alcohol assessment. Womack testified at the termination hearing that his assessment was scheduled to take place after the termination hearing. The trial court found

11

that Womack had disobeyed its order to remain after the November 2020 review hearing for drug testing. Further, Womack conceded that he had tested positive for methamphetamine on a hair-follicle test in May—just two months before the termination hearing, but he testified that his urine drug screen in May was negative. He claimed that he had not used drugs since December 2020, but the trial court was not required to believe this assertion. *Bridges*, *supra*. Womack admitted that he had not attended any AA/NA meetings as requested by DHS. Similar to Younger, Womack had put his probation in danger of being revoked in that he had been arrested in February 2021 on charges of possession of drug paraphernalia, theft by receiving, and a slew of driving-related offenses. Finally, Womack also failed to complete all twelve hours of parenting classes, and he missed a number of visits with his children, which are subsequent factors worth considering. *Guerrero*, *supra*; *Danes*, *supra*.

Womack further argues that DHS did not prove that he is indifferent to remedying the subsequent factors or issues. We disagree. Womack was given a case plan that he refused to follow for the most part despite having fourteen months within which to take advantage of services. *Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 158 S.W.3d 129 (2004) (holding that persistent failure to comply with the court's orders demonstrated that the mother was either incapable of correcting the problems or indifferent to the need to do so). Womack also argues that DHS did not provide services to aid him with housing, employment, and his drug addiction. Womack, however, refused to cooperate with DHS, including not sharing what he called a "temporary" address in Ft. Smith, where he lived for six months. According to FSW Burge, Womack's failure to provide DHS with his address contributed to DHS's

difficulty in providing some services. Nevertheless, DHS *offered* to provide appropriate services, which is all that the statute requires. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). Moreover, the trial court repeatedly found that DHS had indeed offered appropriate services to the parents to assist them with regaining custody of their children; Womack simply failed to take advantage of those services. Under these circumstances, we cannot say that the trial court clearly erred in finding that the subsequent-factors ground supported termination of Womack's parental rights.

Next, Womack challenges the potential-harm prong of the best-interest analysis. A potential-harm analysis must be conducted in broad terms, with the trial court considering the harm to the children's health and safety that might occur from continued contact with the parent. *Barnes v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 525. There is no requirement to find that actual harm would result or to identify the potential harm. *Id.* It is well settled that a parent's past actions over a meaningful period of time are good indicators of what the future may hold. *Easter*, *supra*.

Womack argues that he is "clean, employed, not incarcerated, and has housing." Although Womack insisted that he had not used drugs since December 2020, the trial court was not required to believe this assertion. Even assuming that Womack was "clean," he nevertheless did not have housing of his own and had only recently secured a job. The trial court ordered him to obtain *stable* housing and income. Womack had done neither. Unstable housing and being unavailable for random drug screens demonstrate potential harm. *Williams v. Ark. Dep't of Human Servs.*, 2021 Ark. App. 386; *see also Stockstill v. Ark.*

13

*Dep't of Human Servs.*, 2014 Ark. App. 427, 439 S.W.3d 95 (holding evidence of potential harm sufficient where father's housing was uncertain, he missed visitation, and he failed to participate in early part of case). It is true that Womack was not incarcerated at the time of the termination hearing, but he continued to engage in criminal activities and failed to appear for court, which put his probationary status and freedom in jeopardy. Moreover, evidence that supports the subsequent-factors ground for termination also supports a potential-harm finding. *See Johnson v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 313, 603 S.W.3d 630. We cannot say that the trial court clearly erred in finding that termination was in the best interest of Womack's children.

Finally, Womack contends that, because C.W.2 and C.W.3 desired to see their parents, it was not in the children's best interest to be denied in-person visitation. According to Womack, Ark. Code Ann. § 9-27-325(o) (Supp. 2021) requires that DHS provide him with in-person visits. At the termination hearing, FSW Burge testified that, given that the parents had not consistently attended virtual visits via Zoom and had been late logging on for visits, she did not schedule any in-person visits because she did not want the children to be disappointed should their parents fail to show up for the in-person visit. While we tend to agree that Womack should have received some in-person visits—even during the COVID-19 pandemic—we are not clear how DHS's failure to provide this service has any bearing on whether continued contact with Womack represents potential harm to the health and safety of the children. Further, Womack did not raise any statutory argument below with respect to in-person visitation. Thus, the specific argument that he now raises on appeal is not

14

preserved for review. *Perry v. Ark. Dep't of Human Servs.*, 2021 Ark. App. 193, 625 S.W.3d 374 (holding that we will not address arguments raised for the first time on appeal, even in termination cases).

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant Kerri Younger.

*Dusti Standridge*, for separate appellant Christopher Womack.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.