Cite as 2026 Ark. App. 70

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-280

| | |
|---|---|
| CIERRA JACKSON AND JEFFERY HALL APPELLANTS | Opinion Delivered February 4, 2026 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-23-104] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN APPELLEES | HONORABLE LYNN WILLIAMS, JUDGE AFFIRMED IN PART; MOTION TO WITHDRAW GRANTED; REVERSED AND REMANDED IN PART |

**WENDY SCHOLTENS WOOD, Judge**

Cierra Jackson and Jeffery Hall appeal the Garland County Circuit Court order terminating their parental rights to Minor Child 1 (MC1) (DOB 06/23/21), Minor Child 2 (MC2) (DOB 06/16/22), and Minor Child 3 (MC3) (DOB 06/16/22). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2025), Jackson's counsel has filed a motion to withdraw and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court sent a copy of the brief and the motion to withdraw to Jackson informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3), but the packet was returned undeliverable. Hall has filed a merit brief challenging the sufficiency of the evidence to support the termination. We affirm the termination of Jackson's parental rights and grant her counsel's motion to withdraw, but we reverse and remand the termination of Hall's parental rights.

I. *Procedural History and Termination Hearing*

On March 2, 2023, the Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect alleging that the children were at substantial risk of harm due to abuse, neglect, and parental unfitness. Jackson was identified as the biological mother of the juveniles, and Hall was alleged to be a putative parent. The affidavit attached to the petition set forth DHS's involvement with the family, which included a protective-services case that had been opened when MC2 and MC3 were positive for THC at delivery. During the protective-services case, DHS provided drug screens; weekly home visits; bassinets, diapers, and wipes for the newborn twins; assistance with utilities; and the offer to assist with daycare vouchers and transportation.

The affidavit provided that when DHS conducted the weekly home visit on February 27, 2023, the family-service worker (FSW) noticed a strong smell of marijuana as well as a bong and a half-empty liquor bottle on the kitchen table; the twins were in their bassinets with blankets, one with a bib around her neck. Jackson lied when she told the FSW that the toddler bed had been assembled; her drug test was positive for THC; and she admitted that she was not practicing safe-sleep techniques and said that she probably would not use the cribs that DHS had purchased and offered to assemble for the twins.

The children were removed from Jackson's custody at the home visit. The safety factors that contributed to the removal included that the physical living conditions were hazardous and immediately threatening to the children's health and safety and that Jackson's substance abuse seriously impaired her ability to supervise, protect, and care for the children. The affidavit noted that although Hall was part of the protective-services case, he had gone to jail in November with

2

an unknown release date and had "no involvement or contribution to the situation" that prompted the petition.

The parents stipulated that probable cause existed for the emergency removal, and a probable-cause order was entered on March 14. In the April 25 adjudication order, the parents stipulated to the dependency-neglect finding based on neglect due to Jackson's failure to practice safe-sleep techniques and parental unfitness due to her substance abuse. The circuit court specifically found that the allegations in the petition and accompanying affidavit were substantiated by the evidence. The court set the goal of reunification with a concurrent goal of relative or fictive-kin placement.

In an August 9 review order, the circuit court found that the parents were compliant with the case plan but needed counseling and appropriate housing. The parents were ordered to follow the case plan; submit to random drug screens immediately upon request; maintain an environment free from illegal substances and other health or safety hazards; obtain and maintain adequate income to support themselves and the juveniles; request assistance with transportation forty-eight hours in advance; cooperate with DHS; permit DHS to inspect the home; maintain consistent contact with the juveniles and DHS; keep DHS informed of their current address; and demonstrate stability and the ability to provide for the health, safety, and welfare of the juveniles. The parents were afforded at least four hours of visitation weekly at the reasonable discretion of DHS.

In a second review order entered on December 20, the circuit court found that DHS had made reasonable efforts to provide the following services to achieve the goal of reunification: parenting classes, counseling, drug-and-alcohol assessments and services, psychological

3

evaluations, transportation, random drug screens, and family time. The circuit court also found that the parents had partially complied with the case plan and court orders, had demonstrated progress toward the goal of the case plan, and were working to remedy the conditions that caused removal. Specifically, the circuit court found that Jackson had completed parenting classes and psychological evaluations, but the parents still needed to secure appropriate housing and transportation as well as participate in both outpatient substance-abuse treatment and counseling.

On February 23, 2024, the circuit court entered a permanency-planning order finding that the goal of the case was to authorize a plan to place custody of the juveniles with the parent. The circuit court found that the parents were complying with the case plan and court orders; making significant, measurable progress toward achieving the goals; and diligently working toward reunification. The circuit court found that DHS made reasonable efforts to finalize a permanency plan by providing services. The order noted that the parents were not attending counseling but had completed parenting classes; had been attending outpatient drug rehab and participating in random drug screens, which had been clean; and had transportation.

In a May 23 review order, the circuit court found that although the parents were compliant with the case plan in that they had completed some services and continued to test negative for illegal substances, they did not have stable housing and still needed to participate in counseling. The court continued the goal of reunification. In the next review order entered on September 20, the circuit court found that the parents were "mostly compliant" with the case plan. Although the parents had completed parenting classes, they were not in counseling and neither had reliable transportation. Jackson tested positive for THC on July 31. Jackson was

4

living at Potter's Clay, and Hall was living at a hotel and had a job. The parents were ordered to obtain and maintain a safe, suitable, and appropriate home for themselves and the children and to maintain an environment free from illegal substances and other health and safety hazards.

On January 6, 2025, DHS filed a petition for termination of parental rights alleging one statutory ground, failure to remedy (custodial parent) pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2023), and that termination was in the best interest of the juveniles. A termination hearing took place on February 12.

CASA volunteer A.J. Walker Carter testified that she logged approximately 258 hours in the case since June 2023, with 103 of those hours spent in visitations or speaking with the parents. Carter said that in July 2023, the parents were living in a hotel but were employed and had transportation. They talked about housing, sobriety, and stability; and she began bringing them information about NA/AA meetings, rental listings, budgeting and spending plans, financial-education courses, and how to apply to the Hot Springs Housing Authority. Carter had encouraged them throughout her assignment to continue to find stability in their living situation. Carter testified that just before the hearing, the parents had been approved for a trailer but were not going to take it due to the cost. Carter recommended termination of parental rights because of the parents' instability and the length of the case and did not think that they would be ready to take custody of the children even if they were afforded three more months.

DHS supervisor Jamie Moran testified that the case had been opened due to environmental concerns. She said there was marijuana being smoked inside the home, marijuana and paraphernalia lying out in the open, and a lack of safe-sleep practices for the

5

children. She explained that there was a lack of cooperation and motivation in doing the things to prevent the children from being removed.

Moran testified about the services provided to the family, which included family time, visitation, home visits, transportation, payments for their monthly storage bills, a deposit and the first month payment for their trailer, monthly bus passes for Hall until a vehicle was donated, food assistance, beds, and clothing. Moran said that Jackson had completed outpatient treatment. She said that Jackson went to Potter's Clay because she was homeless and had a new baby but that Jackson was having to leave the Potter's Clay program by March 31 due to noncompliance. Hall had been living at the hotel.

Moran stated that the parents passed on the opportunity to move into the trailer. They had an appointment with the housing authority the morning of the termination hearing, but they did not understand that it can take weeks or months for a home to become available through the process with the housing authority. Moran also stated that despite the parents' psychological evaluations recommending counseling, neither parent participated in counseling.

Moran testified that DHS did everything in its power to help the family and recommended termination. Moran said that the parents passed up houses several times throughout the case, including the trailer where the deposit and first month's rent had been paid by DHS. She said that even if the parents had a home, it would take more work with the family to establish stability due to environmental concerns, parenting skills, and transitioning the children. She noted that Hall had a positive screen for THC the day before the hearing. Moran said that the case has been open for almost two years, and DHS had given the parents additional time to comply on multiple occasions, but the parents would self-sabotage or have a

6

lack of motivation. Moran believed that termination of parental rights was in the children's best interest because they had been in foster care most of their lives and deserved permanency.

Adoption specialist Susan Miller testified that her search identified twenty-six potential adoptive families interested in adopting a sibling group with similar characteristics and that the current foster family expressed an interest in adopting the children. She testified that the children do not have any impediments to adoption.

Hall acknowledged that housing had been an issue throughout the case and that he needed a home to have the children returned. Hall testified that he signed a lease for the trailer but did not move into it because he gets paid twice a month, and no one could help him move. Despite being responsible for the rent on the trailer, Hall said that he was still living in the motel and looking for a place through the housing authority. He explained he did not want to put his children in the trailer because it was cold and he needed to get a propane tank.

Hall testified that a housing authority employee told him to return on February 19 with certain documents, and then they would be placed in a three-bedroom apartment, which he thought would occur soon after. He disputed that he lacked motivation. He said he had applied for housing online and paid application fees, only to be denied because of his criminal record. He also said that he earns only $12 an hour and that Jackson does not work. Hall did not know what the rent would be on the housing-authority apartment but would find out later. He said he could afford the trailer, which was $850 a month, but admitted he had an outstanding bill with the hotel. Hall testified that he would be able to pay for the children's expenses and was trying to get a second job. He said he smoked "weed" recently because he was "stressed out and

. . . about to have a mental breakdown" but that he had done everything else asked of him. He said the main issue is housing and that he needed a little more time.

Jackson testified that they were not able to move into the trailer because it was too cold to live in with her ten-month-old son. She said that she was living at Potter's Clay and was looking for a job but had been unsuccessful. She said that her "Plan B" is for her and her new baby to move in with Hall because she did not have anywhere to go once she had to leave Potter's Clay. She explained that "Plan A" was to save money to help Hall or possibly live by herself with the children. She said she had been approved for housing twice but did not move forward because she did not have money, and even if housing was provided, she did not have money to maintain it.

At the conclusion of the hearing, the circuit court terminated Jackson's and Hall's parental rights to MC1, MC2, and MC3. In the termination order, the circuit court found that there was clear and convincing evidence to support the ground of failure to remedy. Specifically, the circuit court found that the children had been adjudicated dependent-neglected and had continued out of the custody of the mother for more than twelve months, and despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal, the conditions have not been remedied. The court found that despite the case being open for two years and extensive efforts by DHS and CASA to assist with housing, the parents do not have stable housing. The court also found that the parents had not started counseling, and Hall recently tested positive for THC. The court found that the parents demonstrated a lack of urgency in remedying the conditions that prevented placement of the children with them and

that the evidence established that termination was in the best interest of the juveniles, considering both adoptability and potential harm. This two-parent appeal followed.

## II. *Jackson's No-Merit Appeal*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation as to why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the petition's statement of the case and facts are required to contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, *supra*.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, at 503, 262 S.W.3d 159, 162 (2007). The standard of review in appeals of termination of parental rights is de novo, but we reverse a circuit court's decision to terminate parental rights only when it is clearly erroneous. *Noblitt v. Ark. Dep't of Hum. Servs.*, 2023 Ark.

9

App. 462, at 3, 677 S.W.3d 823, 825. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Id.* at 4, 677 S.W.3d at 825. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Edwards v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 37, at 7, 480 S.W.3d 215, 219. Proof of only one ground is necessary to terminate parental rights. *Alexander v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 345, at 11, 634 S.W.3d 807, 815–16.

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration the likelihood that the juvenile will be adopted if the termination petition is granted, and the potential harm, specifically addressing the effect on the health and safety of the child, that would be caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Jackson's counsel asserts that after a conscientious review of the record, she has determined that there are no issues of arguable merit for appeal. She identifies the only adverse ruling, which is the termination itself.

Counsel addresses the circuit court's failure-to-remedy finding as the statutory ground for termination. To prevail on the failure-to-remedy ground, DHS must demonstrate (1) the child was adjudicated dependent-neglected; (2) the child remained out of the custody of the parent for twelve months; (3) the parent failed to remedy the cause of the removal; and (4) this

10

failure occurred despite meaningful efforts by DHS to rehabilitate the parent and correct the issue that caused the removal. Ark. Code Ann. § 9-27-341(b)(3)(B)(i).

Here, Jackson stipulated that the children were dependent-neglected. They had been out of the home for almost two years at the time of the termination hearing. At the termination hearing, DHS presented detailed evidence about the services offered to Jackson to help rehabilitate her. The evidence established that Jackson failed to remedy the cause of removal, which included that the physical living conditions were hazardous and immediately threatening to the children's health and safety. At the time of the termination hearing almost two years later, not only had Jackson not made progress on remedying the issues with her physical living conditions, but she had no home. We conclude that counsel has adequately explained why there is sufficient evidence to support the court's findings on the failure-to-remedy ground and why appealing the statutory-ground finding would be wholly frivolous.

Regarding the circuit court's best-interest finding, counsel contends that there can be no meritorious challenge to the circuit court's best-interest finding and concludes that the facts supporting potential harm, in conjunction with the evidence of the children's adoptability, provided sufficient evidence for the circuit court to find that termination of Jackson's parental rights was in the children's best interest. We agree.

The potential harm is lack of stability and safe housing. One of a child's most basic needs is a stable home. *Williams v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 386, at 7. Unstable housing can demonstrate potential harm. *Younger v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 138, at 13, 643 S.W.3d 487, 495. Jackson's physical living conditions had not improved at the time of the termination petition because she still had no home. Regarding adoptability, the adoption

11

specialist testified that the children do not have any conditions that would be impediments to adoption; she identified twenty-six potential adoptive families; and the current foster family expressed an interest in adopting the children. Accordingly, we conclude that counsel has adequately explained why there is sufficient evidence to support the court's best-interest finding and why appealing its best-interest determination would be wholly frivolous.

### III. *Hall's Merit Appeal*

Hall contends that the circuit court erred in terminating his parental rights because the sole statutory ground alleged by DHS did not apply to him. DHS concedes error. We agree.

In its petition for termination of parental rights, DHS alleged one statutory ground—failure to remedy by the custodial parent. Hall was incarcerated at the time of removal in February 2023 and had not lived with Jackson since November 2022. The children were adjudicated dependent-neglected in April 2023 based on Jackson's actions, and the affidavit in support of the petition provided that Hall "had no involvement or contribution to the situation" that resulted in the petition being filed. The adjudication order found that the allegations in the petition and affidavit were supported by the evidence.

This court has reversed a termination order under similar circumstances where the statutory ground pled by DHS could not support the father's termination. In *Smith v. Arkansas Department of Human Services*, 2025 Ark. App. 271, at 13–14, 712 S.W.3d 792, 800, the children were in the custody of the mother when the children were removed for inadequate supervision, environmental neglect, and the mother's alcohol abuse. Like Hall, the father in *Smith* was in jail

12

at the time of the children's removal from the mother and did not contribute to the conditions that caused removal.

Here, the only statutory ground pled by DHS cannot support Hall's termination of parental rights because the children were not removed from his custody. Therefore, the circuit court clearly erred in relying on this ground as a basis for terminating his parental rights.

Affirmed in part; motion to withdraw granted; reversed and remanded in part.

HIXSON and BROWN, JJ., agree.

*Davis Firm, PLLC*, by: *Jason R. Davis*, for separate appellant Cierra Jackson.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for separate appellant Jeffery Hall.

No appellees' brief.