Cite as 2022 Ark. App. 299

# ARKANSAS COURT OF APPEALS
DIVISION I

No. CV-22-35

| | |
|---|---|
| MICHELLE BALTZELL | Opinion Delivered August 31, 2022 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 26CV-20-190] |
| ARKANSAS DEPARTMENT OF | HONORABLE LYNN WILLIAMS, |
| HUMAN SERVICES AND MINOR | JUDGE |
| CHILD | |
| APPELLEES | AFFIRMED; MOTION TO |
| | WITHDRAW GRANTED |

**BART F. VIRDEN, Judge**

The Garland County Circuit Court terminated the parental rights of appellant Michelle Baltzell to her daughter, Z.B. Baltzell appeals the decision to terminate her rights, and her counsel has filed a motion to withdraw along with a no-merit brief pursuant to our rules and caselaw, stating that there are no meritorious grounds to support an appeal. Ark. Sup. Ct. R. 6-9(i); *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004). Our court clerk mailed a certified copy of counsel's motion and brief to Baltzell and notified her of her right to file pro se points for reversal. We affirm the termination and grant counsel's motion to withdraw.

## I. *Background*

The Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect on July 8, 2020. In an affidavit attached to the petition, a family-service worker supervisor attested that DHS had received a hotline referral on July 8 alleging medical neglect of then one-month-old Z.B. because Baltzell, who had called her pediatrician on July 6 about Z.B.'s arm, had disregarded the pediatrician's advice to take Z.B. to the hospital immediately. When Z.B. was finally examined at Arkansas Children's Hospital, it was found that she had sustained a broken arm, multiple broken ribs, and a subdural hematoma. A second affidavit accompanied the petition in which an investigator with the Arkansas State Police Crimes Against Children Division (CACD) stated that Baltzell and everyone in the household had been interviewed, including the maternal grandmother and Z.B.'s two juvenile uncles, and that the history given by family members was not consistent with Z.B.'s injuries. Ryan Ragan was identified as Z.B.'s putative father. The trial court entered an ex parte order for emergency custody of Z.B.

Z.B. was subsequently adjudicated dependent-neglected as a result of abuse, neglect, and parental unfitness. The order noted that Baltzell claimed that Z.B. had slipped out of Ragan's arms while the three of them were showering; however, Ragan claimed that Baltzell's family, with whom they were living, had forced him to tell the shower story. Ragan later said that he was not present when Z.B. was injured. The trial court found that nonaccidental physical abuse had occurred and concluded that everyone in the household was a potential offender. Baltzell did not appeal from the adjudication order.

Review orders were entered in December 2020 and in March and May 2021. The goal was stated as reunification with a concurrent goal of relative or fictive-kin placement. In both the December and March orders, the trial court found that Baltzell had not complied with the case plan and court orders, although the court noted that she had completed parenting classes and had stable housing in December and that she had submitted to counseling and still had housing in March. Regarding the May order, the trial court found that Baltzell had partially complied in that she had completed more services.

DHS filed a petition to cease providing reunification services to Baltzell in May. A hearing on DHS's petition was held in conjunction with a permanency-planning hearing. In its order, the trial court changed the goal of the case to adoption and termination of parental rights with a concurrent goal of relative or fictive-kin placement. The trial court withheld its ruling on DHS's petition and ordered DHS to assist Baltzell in finding stable and appropriate housing. Specifically, the trial court found that "[t]his child suffered extensive injuries, which resulted from multiple violent incidents at different points in time; none of the adult caretakers (parents and maternal grandparents) have ever provided a sufficient history to explain the extent and number of injuries" and that "[a] big step toward helping assure the Court that the child would be safe if returned to the mother is if she were to acquire her own housing."

In June 2021, DHS filed a petition to terminate Baltzell's parental rights, alleging several grounds under Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021), including (i)(*a*) (failure to remedy); (ii)(*a*) (failure to provide material support); (vii)(*a*) (other subsequent

factors); and (ix)*(a)(3)(B)(i)* (aggravated circumstances—little likelihood that services to the family will result in successful reunification). A hearing was held on DHS's petition for termination of both Baltzell's and Ragan's parental rights.

Jamie Moran, a DHS caseworker supervisor, testified that Baltzell was still living with her parents. She said that Baltzell planned to put a camper on her grandparents' property but that the camper had no electricity or running water. She also said that Baltzell's counsel had informed her "less than 30 seconds ago" that Baltzell has plans to rent an apartment. Moran said that DHS had offered to assist Baltzell with transportation and her application to get housing but that Baltzell had refused and said that she would do it herself. Moran said that Baltzell had otherwise cooperated and completed the services. She testified that, even if Baltzell had obtained her own housing, DHS would be concerned about returning Z.B. to Baltzell because the adults in the household know something but are protecting each other or themselves.

Baltzell insisted that she had been searching for an apartment since the last court date but that everything was booked because of COVID-19. She said that she had finally—the day prior to the hearing—found an apartment but that it would not be ready until the week after the hearing. She later testified that she could not remember the name of the apartments, did not know the name of the person she spoke with about the apartment, did not know how much the rent was going to be, and did not know anything about a deposit. Baltzell testified that she did not know who had abused Z.B. but that she did an investigation of her own and

that it was likely Ragan. She later repeated the shower story. Baltzell said that DHS was trying to take Z.B. away from her because "all they care about is the money."

In its oral ruling from the bench, the trial court noted that Baltzell had had four months within which to find housing but that "time has run out." The trial court found that Baltzell's testimony about her efforts to find housing were not believable. The trial court said that it could not put Z.B. back in the home where someone in that household had abused Z.B. The trial court also noted that Baltzell had refused DHS's assistance to transport her to try to get housing and that there were no other services that DHS could offer her to get Z.B. back.

In an order entered October 19, 2021, the trial court found that DHS had proved all four grounds alleged in its petition as to Baltzell and found that termination was in Z.B.'s best interest. The trial court found that Z.B. is adoptable in that an adoption specialist had testified that 194 families had expressed an interest in adopting a child with Z.B.'s characteristics. The trial court also found potential harm in returning Z.B. to Baltzell's custody because she had not demonstrated stability and because she had not secured housing separate from those who had perpetrated abuse on Z.B.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Roland v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 333, 552 S.W.3d 443. An order terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the child's best interest. *Id*. The trial court must consider the likelihood that the child will be adopted if the

5

parent's rights are terminated and the potential harm that could be caused if the child is returned to a parent. *Id.* The trial court must also find that one of the grounds stated in the termination statute is satisfied. *Id.* The question on appeal is whether the trial court's finding on the disputed fact is clearly erroneous, which means that, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

In dependency-neglect cases, if, after studying the record and researching the law, appellant's counsel determines that the appellant has no meritorious basis for appeal, then counsel may file a no-merit petition and move to withdraw. Ark. Sup. Ct. R. 6-9(i)(1). The petition must include an argument section that lists all adverse rulings that the parent received at the trial court level and explain why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A).

### III. *Adverse Rulings*

Counsel addressed the sufficiency of the evidence supporting termination of Baltzell's parental rights, specifically, the aggravated-circumstances ground. Z.B. had been abused in the home in which Baltzell continued to live, and although she had been told to obtain her own housing, she refused DHS's assistance. In termination cases, a challenge to a finding of abuse must be made, if at all, in an appeal from the adjudication order. *Roland, supra.* Baltzell did not appeal the trial court's finding that Z.B. was abused.

With respect to best interest, an adoption specialist testified that Z.B. is adoptable. On potential harm, Baltzell continued to live in the home where Z.B. had been abused; she refused DHS's assistance to obtain housing; and she failed to obtain housing of her own

6

despite having had four months within which to do so. Counsel asserts that there are no other adverse rulings aside from the termination itself.[1]

We agree with counsel that there is no meritorious challenge to the aggravated-circumstances ground that was used to terminate Baltzell's parental rights. Counsel adequately explained why there is sufficient evidence to support the termination and why an appeal would be wholly frivolous. In short, counsel has complied with our rules for no-merit briefs and the requirements of *Linker-Flores*, *supra*.

On a final note, we will not consider Baltzell's untimely pro se points for reversal. **In the letter from the court clerk notifying Baltzell of this right,** the deadline for filing was clearly stated as March 19, 2022, which fell on a Saturday. Thus, Baltzell had until March 21 to file her pro se points. Baltzell's pro se points were tendered March 23. Our court clerk immediately sent Baltzell a letter notifying her that the points were late and that she must file a motion requesting permission to file the points belatedly if she wished them to be considered. Baltzell filed no such motion with this court. We thus do not consider her pro se points.

---

[1]During her testimony, Baltzell requested more time to secure housing; to the extent that this was an adverse ruling, given the trial court's implicit denial, it would not amount to a meritorious ground for appeal. There was no requirement that Baltzell be given additional time in light of Z.B.'s need for permanency. *See, e.g.*, *Danes v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 388, 585 S.W.3d 731 (holding that the refusal of a last visit had no bearing on the merits of the termination of parental rights). Even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. *Beaty v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 621, 534 S.W.3d 190.

7

Affirmed; motion to withdraw granted.

GRUBER and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.